## ROADS IN LONDONDERRY TOWNSHIP.

APPEALS BY PETITIONERS FROM THE COURT OF QUARTER SESSIONS OF DAUPHIN COUNTY.

Argued June 3, 1889—Decided June 28, 1889.
[To be reported.]

(*a*) Upon a petition praying that a certain highway, crossing a railroad at grade, be vacated, as having become useless, etc., in consequence of a new road which had been laid out on a better location, with an overhead crossing of said railroad, viewers were duly appointed.

(*b*) The viewers reported that the highway first mentioned had become useless, dangerous, inconvenient and burdensome, and ought therefore to be vacated, and that said vacation should take effect when the railroad company had completed ready for use an overhead bridge across its tracks, on the new road mentioned.

1. This provision, as to the time when the vacation should take effect, did not render the report conditional, in the objectionable sense of Lathrop Tp. Road, 84 Pa. 126, and O'Hara Tp. Road, 87 Pa. 356; but simply identified the new road to be substituted, and put into express words what would otherwise have followed, as an implication of law, from § 24, act of June 13, 1836, P. L. 555.

2. There was nothing in the provision affecting the regularity of the proceedings, or preventing the confirmation of the report; the actual closing of the vacated road being within the entire control of the court, to be exercised by withholding or postponing the order for closing until satisfied the time fixed alike by the report and the statute should arrive.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 9, 10 May Term 1889, Sup. Ct.; court below, Nos. 6, 7 Road Docket 1888, Q. S.

On March 23, 1888, to No. 6 Road Docket 1888, in the court below, was filed the petition of divers citizens of Londonderry township, setting forth that a certain part of a road or street in the village of Port Royal, in said township, which crossed at grade the tracks of the Harrisburg, Portsmouth, Mt. Joy & Lancaster railroad, operated by the Pennsylvania Railroad Company, had become useless, inconvenient and burdensome, by reason of the location of a new road with an overhead crossing of said railroad tracks; praying for the appointment of viewers to view and vacate the same. On the same day viewers were appointed as prayed for.

At the same time a similar petition praying that a part of a certain other road or street in said village might be vacated for like reasons, was filed to No. 7 Road Docket 1888, in the court below, and the same viewers were appointed to report thereon.

On May 16, 1888, the viewers filed a report in each case. Each of these reports was in the following form:

" The undersigned, appointed by the within and annexed order of court, to view the road therein mentioned, respectfully report:

" That having been all first duly sworn, and having given due notice to all concerned, pursuant to said order, we met on the premises on May 4, 1888, pursuant to said notice, and viewed the road in said order mentioned and described, and that we are of opinion that the same has become useless, dangerous, inconvenient and burdensome, and ought therefore to be vacated, viz.: [here describing the piece of road to be vacated.] And said viewers further report that said vacation shall take effect from the time when the Pennsylvania Railroad Company shall have completed ready for use, including approaches thereto, an overhead bridge over the tracks of its road on Burd street, in said township and village, and near to the road hereby vacated: May 12, 1888."

No exceptions were filed to either report, but on June 12, 1888, certain citizens of Port Royal filed in the proceedings at No. 7, a petition setting forth that for certain specified reasons

they objected to the vacation of the street involved in that case, praying that the order to view the same be revoked, and that the petition for vacation be dismissed. The first of the reasons specified in support of the application for revocation was, that by the confirmation of the report the street in question would be divided into two culs de sac. The other reasons consisted of matters of fact, outside the record, bearing upon the necessity and propriety of the proposed vacation.

The reports of viewers having come up regularly for consideration, the court, SIMONTON, P. J., refused confirmation and set the proceedings aside in each case, for the reasons stated in the following opinion, filed at No. 7 Road Docket 1888:

The report of the viewers in this case contains upon its face a fatal error. The viewers report that they are of the opinion that the road in question has become useless, dangerous, inconvenient and burdensome, and ought therefore to be vacated. The said viewers further report that said vacation "shall take effect from the time when the Pennsylvania Railroad Company shall have completed, ready for use, including approaches thereto, an overhead bridge from the tracks of its road on Burd street, in said township and village, and near to the road hereby vacated."

This leaves the finding of the jury conditional, and renders it impossible for the court to confirm the report for the reasons given in Lathrop Tp. Road, 84 Pa. 126. In that case the condition which was held fatal by the Supreme Court was in the decree of the court below, and not in the report of the viewers, while in this case it is in the report; but the confirmation of the report would carry it into the decree, and we think that the cases are essentially parallel. The Supreme court says: "The conditional confirmation suspends the effect, and puts the record and effect of the decree in abeyance, until payment of the damages, an act necessarily done in pais. . . . . Now what guide has the clerk for entering the whole proceedings on the record? Is he to determine the fact of payment?" So here; how is the clerk to determine when the Pennsylvania Railroad Co. shall have completed, ready for use, including the approaches thereto, an overhead bridge from the tracks of its

road as provided in the conditional report? The road laws certainly make no provision for such a conditional finding as that contained in this report, and, as said in the case above cited of the decree, the report in this case is therefore illegal and invalid, and confirmation must therefore be refused and the proceedings be set aside: See, also, O'Hara Tp. Road, 87 Pa. 356.

Thereupon the petitioners for vacation took these appeals, specifying that the court erred:

1. In refusing to confirm the reports of the viewers.

2. In setting aside said reports.

*Mr. Lewis W. Hall* (with him *Mr. Francis Jordan*), for the appellants:

1. The petition in case No. 7, for revocation of the order to view, was unauthorized by any statute, wholly unknown to the practice in such cases, and a mere nullity. These cases were not simply proceedings to vacate, but proceedings to vacate because of a better location of a new and safe road, to take the place of the old and dangerous grade crossings. The reports are in the exact line of the authority of the viewers. They are not in the alternative. They simply vacated parts of the old roads as useless, and then in effect provided that the old roads should not be closed up till the new way was opened. They had power to do this: Mill Creek Tp. v. Reed, 29 Pa. 195. If they had not, the limitation is surplusage, and the reports must stand without it.

2. The court below held that the reports were conditional and illegal, under the decisions in Lathrop Tp. Road, 84 Pa. 126, and O'Hara Tp. Road, 87 Pa. 356. In those cases, the contention was over awards of damages. The courts below modified the reports of viewers by conditional orders of confirmation not authorized by the act of assembly, which requires the court either to confirm or withhold confirmation of the report. The cases are not parallel with the ones at bar. It was, however, held by this court in the O'Hara Tp. Road, that where the viewers went beyond their authority as to the imposition of damages, this was not fatal to the report, but should be treated as mere surplusage.

3. The court below ruled that the road laws made no provision for such findings as those contained in these reports. We submit that § 18, act of June 13, 1836, P. L. 555, empowering viewers to change and vacate the whole or any part of a road which shall have become useless, inconvenient and burdensome, and § 24 of the same act, providing that a road changed or supplied shall not be shut up or stopped until the road laid out to supply its place shall be actually opened, authorize exactly what the viewers did in these cases. Any other finding than the viewers made, would shut up two roads before their place is supplied, and would thus leave the people without any highway.

*Mr. James I. Chamberlin,* for the appellees:

1. The act of June 13, 1836, P. L. 555, vests in the Courts of Quarter Sessions the fullest discretionary power over proceedings to vacate public roads. From the start to the finish they have full control. Without an exception filed, or an objection made, they may refuse to appoint viewers on a petition for vacation: Newville Road Case, 8 W. 176.

2. Independent of the fact that the court had discretionary power, it will be assumed that its action was based upon sufficient reasons. The petition of the objectors set forth moving causes, not mentioned in the opinion of the court, but which it undoubtedly considered legally sound in refusing confirmation. The fatal condition in the reports cannot be dodged by calling it surplusage. It was inserted by the viewers as a vital part of their reports.

3. The citation on the other side of Mill Creek Tp. v. Reed, 29 Pa. 195, is not apposite. This proceeding is not the vacating of an old road, as soon as the new one is laid out, for no new road has been opened. It is the vacating of a portion of a street, to take effect at the time when a stranger to the record shall have performed a condition which the court had no power to compel the performance of. Lathrop Tp. Road, 84 Pa. 126, and O'Hara Tp. Road, 87 Pa. 356, are plainly applicable.

OPINION, MR. JUSTICE MITCHELL:

The learned court below seems to have felt constrained to set aside these proceedings because the findings of the viewers were conditional, and, therefore, illegal and invalid, under the

cases of Lathrop Tp. Road, 84 Pa. 126, and O'Hara Tp. Road, 87 Pa. 356. Both of these cases were decided on technical grounds, and should not be held binding except where the same or similar technical defects exist. Without adverting to minor differences between those cases and the present, it is sufficient to note the substantial distinction between proceedings to open a road, in the first instance, and those to vacate an existing road, because it has become "useless, inconvenient or burdensome." The latter is usually, as in the present case, a proceeding with two branches, the closing of the old way, and the opening of a new one in its stead. It is of practical importance that the first branch should not be proceeded with so far in advance of the second, as to leave the public, even for a brief interval, without any way at all. This inconvenience has been guarded against by the act of 1836 itself, § 24 of which provides that "whenever the whole or any part of a road shall be changed or supplied, the same shall not be shut up or stopped, until the road laid out to supply the place thereof shall be actually opened and made."

This necessarily implies an interval of time between the decree of vacation, and the order to close in fact, for it will rarely happen that the new way will be actually constructed, until it is made certain that the old will be vacated and the new accepted as a substitute.

Examining the reports of the viewers in the light of this provision of the statute, we do not find that they are conditional in the objectionable sense of the cases cited. The finding that the road "has become useless, dangerous, inconvenient, and burdensome, and ought therefore to be vacated," is certain and absolute; and the further report that the said vacation shall take effect when the overhead bridge on Burd street shall be ready for use, does no more than identify the new road which is to be substituted for the one vacated, and put into express words the direction as to the time of actual closing, which would otherwise have followed as an implication of law, from the section of the act of 1836 above quoted. This is a matter under the entire control of the court, by withholding or postponing the issue of the order for closing, until satisfactory evidence is presented that the time fixed alike by the report of the viewers, and by the statute, has arrived. There

is nothing, therefore, in this provision of the reports which affects the regularity of the proceedings, or which need prevent the confirmation of the reports, and the making of decrees of vacation of the roads as recommended therein.

It is·not intended by our opinion or action in these cases to infringe in any way upon the discretionary control of the court below over proceedings of this nature. In one of the cases there were no exceptions of any kind filed to the proceedings ; and in the other, no formal exceptions, but only a petition to revoke the appointment of viewers. The learned judge in setting aside the proceedings put his reasons on the record formally as part of his order, and the case has been argued by counsel for both appellants and appellees, as if the reasons were regularly before us for review. We have assumed, therefore, that the court as well as the parties desired a decision on the case as thus presented. In reversing the orders, therefore, the extent of our decision is that the proceedings are regular on their face, and the reasons assigned on the record for setting them aside are not legally sufficient. If any other objections to confirmation exist, the court as to them will be entirely untrammeled by our present action.

> Orders setting aside proceedings reversed, and records remitted for further proceedings according to law.