## Mellick v. Pennsylvania Railroad, Appellant.

203        457·
30 SC ⁵320

203    457
225   ¹547
226   ¹200
226   ¹201

*Appeals—Practice—Appeal from Superior to Supreme Court—Assignment of error.*

In regard to the assignment of errors, an appeal from the Superior Court to the Supreme Court is analogous to an appeal from a judgment of the common pleas or orphans' court on exceptions to the finding and report of an auditor or referee. The proper form, therefore, is that, "The Superior Court erred in not sustaining (or in sustaining as the case may be) the first assignment of error to the judgment of the common pleas, to wit:" etc.

*Road law—Obstruction of road—Act of June 13, 1836, P. L. 558.*

A contractor for the construction of an approach to a county bridge who obstructs a public road lying at right angles to the approach to a bridge, without any real necessity therefor is guilty of violating section 24 of the Act of June 13, 1836, P. L. 558, which is as follows: "Whenever the whole or any part of a road shall be changed or supplied, the same shall not be shut up or stopped until the road laid out to supply the place thereof shall be actually opened and made." The burden is on the contractor to show an absolute necessity for the obstruction.

Where a contractor for the construction of an approach to a county bridge obstructs a public road, and a railroad company at another point in the road dumps earth in order, as it is claimed, to give access to its station which had been cut off by the obstruction, and the contractor is thereby

compelled to haul material from a greater distance, the railroad company
is not liable to the contractor for his loss, if in fact it dumped the earth in
good faith for the purpose stated. In a suit to recover such loss the rail-
road company for the purpose of showing its good faith, and also to show
why it had not completed the new way to its station, may offer in evidence
a decree by which it was enjoined from doing further work on such road.

The necessity for closing an old road before the actual opening of a new,
must be real and clearly proved, and the onus of so proving it is on him
who closes it. That it is easier, cheaper and quicker to close it will not
avail. The plain intent of the law is that the public shall have the use of a
road, either the old or the new, all the time.

*Nuisance—Obstruction of highway—Measure of damages.*

The general rule for the measure of damages in cases of private injury
by a public nuisance is the cost of abating it, if that is less than the amount
of the damage suffered.

Where a person has suffered special injury by the obstruction of a high-
way, if he can remove the obstruction at a trifling cost, such cost is the
measure of his damages.

Argued April 14, 1902. Appeal, No. 206, Jan. T., 1901, by
defendant, from judgment of Superior Ct. Jan. T., 1901, No. 42,
affirming judgment of C. P. Columbia Co., May T., 1898, No. 14,
on verdict for plaintiff in case of O. B. Mellick v. Pennsylvania
Railroad Company. Before McCollum, C. J., Mitchell,
Dean, Brown and Mestrezat, JJ. Reversed.

Appeal from Superior Court. The facts appear in the opin-
ion of the Supreme Court.

The case is reported in 17 Pa. Superior Ct. 12.

*Error assigned* was in the following form:

" That the Superior Court erred in directing judgment in the
following language, viz: We can find no reversible error com-
mitted and, therefore, the judgment is affirmed.

" Portions of the opinion of the Superior Court included thus
[    ] present the several statements of fact and law upon
which the above stated judgment was based, and are assigned
also for error."

Then followed numbered extracts from the opinion of the
Superior Court.

*James Scarlett*, with him *L. E. Waller*, for appellant, cited:
Londonderry Twp. Roads, 129 Pa. 249; Reese v. Hershey, 163

Pa. 253; Reel v. Martin, 12 Pa. Superior Ct. 345; Barclay R. R. & Coal Co. v. Ingham, 36 Pa. 194.

*Fred Ikeler*, of *Ikeler & Ikeler*, with him *Edward S. Gearhart*, for appellee, cited: Knowles v. Penna. R. R. Co., 175 Pa. 624.

OPINION BY MR. JUSTICE MITCHELL, October 13, 1902:

The assignments of error are not in the best form, being mainly propositions or detached quotations from the opinion of the Superior Court. The question here is not whether the Superior Court was critically accurate in all its statements of law or fact, but whether it was correct in its dealing with the alleged errors of the court below. In regard to the assignment of errors, an appeal from the Superior Court to this court is analogous to an appeal from a judgment of the common pleas or orphans' court on exceptions to the findings and report of an auditor or referee. The proper form therefore is that " the Superior Court erred in not sustaining (or in sustaining as the case may be) the first assignment of error to the judgment of the common pleas, to wit," etc. The assignments of error in the Superior Court are therefore the principal errors with which this court is usually concerned and which will generally develop the whole controversy, but if there are any new and further matters raised by the judgment of the Superior Court itself, they should be assigned separately in their due order.

A public road crossed underneath a railroad and then ran parallel with it but at a lower grade a short distance to a ferry. A bridge was being constructed, the approach to which would cross the road at right angles, but above it at the grade of the railroad. Plaintiff who was constructing the approach dumped earth, etc., necessarily, as he claimed, on the old road between the bridge pier and the railroad, so that the road was practically closed. Defendant then dumped earth, etc., on the old road at the place where it ran under the railroad.

Up to this point the facts are substantially undisputed. Plaintiff claimed that the dumping of earth under the railroad by the defendant obstructed the old road, thereby compelling him to haul material for his fill from the other side of the river at increased expense, and that it was done intentionally with that object. Defendant claimed first that it had not obstructed

the plaintiff inasmuch as he had ceased hauling from that side of the river before the dump was made; and secondly, that plaintiff's filling in on the road had obstructed the access to its station, and its dumping of materials on the road was with intent to make a slope by which the public could continue to get to its station until the new road should be opened across the bridge. This was the substantial issue at the trial. It is clear that the defense was good in law, if true in fact, and the question here is whether the defendant was allowed proper opportunity to present it to the jury.

The most important errors to which our attention is called relate to the construction of the act of June 13, 1836. The court instructed the jury that the plaintiff had the right to obstruct or close the old road at the point where the bridge approach crossed it, if it was necessary in building the approach. But unfortunately there was no evidence in the case to justify this instruction. Section 24 of the Act of 1836, P. L. 558, provides that "whenever the whole or any part of a road shall be changed or supplied, the same shall not be shut up or stopped until the road laid out to supply the place thereof shall be actually opened and made." While we might hesitate to say that there may not be a case of necessity so absolute as to permit the temporary closing of the old road before the actual opening of the new, yet the necessity must be real, must be clearly proved, and the onus of so proving it was on the plaintiff. The explicit mandate of the statute is against it, and therefore that such method may be easier, cheaper and quicker will not avail. The plain intent of the act is that the public shall have the use of a road, either the old or the new, all the time. Such is the received construction of the act. In Roads in Londonderry Township, 129 Pa. 244, it is said, "Vacating a road is a proceeding with two branches, the closing of the old way and the opening of the new one in its stead. It is of practical importance that the first branch should not be proceeded with so far in advance of the second as to leave the public even for a brief interval without any way at all. This inconvenience has been guarded against by the act of 1836 itself," citing section 24. And where an order closing the old road was improvidently made under the supposition that the new road had

been actually opened, the order was set aside as void: Phila., etc., R. R. Co.'s Appeal, 171 Pa. 312.

It was argued that the necessity here was so manifest that the jury might find it without any affirmative testimony. But a verdict must be founded on the evidence in the case, not on the jury's notions outside of what is before it. See Forrest v. Buchanan, ante, p. 454. And independent of that, the inference from the admitted facts here is rather the other way. There is nothing to show that the old road could not have been spanned by a trestle and thus kept open until the new roadway of the bridge was ready for use. If the bridge had been part of an entirely unconnected highway having no relation to the old one, which was to remain, the approach would have had to be carried across the latter on a permanent arch of stone or iron, or trestle work. There is nothing to indicate that this might not have been done by a temporary structure which would keep the old road open in compliance with the requirements of the statute until the new roadway over the bridge should take its place.

So far as appears therefore the plaintiff had unlawfully closed the highway, and defendant claimed that its dumping of earth at the other point was with the intent to avoid this result by making a new way up a slope by which access could be had to the top of the plaintiff's embankment and thus to its own station. Defendant requested the court to charge that "the railroad company had the legal right to restore the approach of the wagon road from the point under its railroad bridge to the south end of the new river bridge, the wagon road so graded being within the limits of the lessor railroad company's right of way." To this the court answered, "We say to you, gentlemen, that within their right of way the railroad company had the right to do whatever they saw fit—to put in such fills and such materials within their right of way and on either side of their line of way as they desired—so long as they did not interfere with the public highway; but they had no right to obstruct the public highway. There is an authority given a railway company where their railway is laid out upon or over the route of a public road to construct their road upon that line, but they must first change the route of the old road and the new road must be built before they can obstruct the old one." This

answer was not adequate, and the latter part of it referring to the statutory right to occupy a highway was entirely irrelevant. It is ancient law that if a traveler finds the highway obstructed, he may of necessity go around the obstruction even though in so doing he does what would ordinarily be a trespass on the adjoining lands. The traveler's right is limited and temporary, but if the adjoining owner chooses to facilitate travel by making a new roadway on his own land by which to avoid the obstruction, he injures no one and is clearly within his rights. That is what the defendant claimed to have been doing in this case, and it was entitled to a clear affirmance of its point. The real contention on this branch of the case was upon the good faith of defendant's action. It, as already said, claimed that it was trying to facilitate travel while plaintiff insisted that the intent as well as the result was to hinder and obstruct him. This phase of the case was carefully and correctly submitted to the jury as a question of fact, but unfortunately the defendant's rights were not made clear, and the adverse verdict may have been partly or wholly the result of the omission.

The defendant did not in fact complete the new slope or roadway which it claimed to have commenced by its dump of earth under its own bridge. In explanation it claimed that it was stopped by injunction, and asked the court to charge that " an injunction from this court having been served August 24, 1894, upon defendant, the railroad company cannot be held responsible for doing no further work on old ferry road pending the injunction." To this the court answered, " That we do not affirm. If when the injunction was served upon this company there was an obstruction in the highway—an obstruction placed there by this company—the defendant company would be guilty of having placed this obstruction there and they would be responsible to any person who suffered actual damage thereby—such damages as were peculiar to himself, as we have before instructed you." This answer did not meet the point. As already discussed the real contention was over the good faith of the defendant's action. It had in fact dumped earth on the road so as to obstruct it and had failed to construct the new way to its station which it asserted was its object. The reasons for such failure had a very material bearing on the question of its good faith and the injunction in

the equity suit though not between the same parties was relevant evidence upon the reasons. The point therefore should have been affirmed with an explanation to the jury that if the injunction was the true reason why the defendant did not complete the new way up the bank to its station, it was evidence to rebut the inference that otherwise might be drawn from such failure to complete.

The only remaining subject that we need notice is the direction of the court as to damages. Defendant requested the court to charge substantially that if plaintiff could have removed the obstruction at a trifling cost, such cost was the measure of his damages. The court answered, " That, gentlemen (under the authority of Knowles against The Pennsylvania Railroad Company) we do not affirm. Had the railroad company deposited material or placed material or placed a fence or anything else as an obstruction upon the plaintiff's land and he were seeking to recover damages caused by that material so placed upon his land or for that obstruction placed upon his land, then the rule of damages would be the damages sustained by reason of the presence of that obstruction upon his land, or if he could remove it for less than the damages that he might show that he received by the presence of that obstruction, then the rule would be the amount that he could remove it for; but, this being an obstruction off the plaintiff's premises and upon a public highway, if he was damaged at all thereby we say that that rule as stated in this point does not apply in this case." This answer was erroneous. The fact that the obstruction was on the highway did not prevent the plaintiff from removing it. The right of a traveler to remove an obstruction if he can do so peaceably is incontestable, and plaintiff had the rights of a traveler on this road. If it had been merely a pile of railroad ties, it would hardly be the subject of question, that plaintiff or any other traveler could throw them out of the way. The fact that there were earth, stones and perhaps other materials there, merely increased the difficulty or expense, but in no way affected the right. Of course defendant was not bound to attempt the removal at the risk of a breach of the peace, but if there was any evidence of such danger, it has not been shown to us, and in any case would be a matter for the jury.

The learned judge apparently was misled by Knowles v. Penna. R. R. Co., 175 Pa. 623, and the facts in some respects are very similar. But the only question there was whether the plaintiff had suffered any special injury, different except in degree from that of the general public, and if so whether the liability was on the city or the railroad. The measure of damages was not raised or considered. The general rule for the measure of damages in cases of private injury by a public nuisance is the cost of abating it, if that is less than the amount of the damages suffered: Barclay R. R. & Coal Co. v. Ingham, 36 Pa. 194. See also Lentz v. Carnegie Bros. & Co., 145 Pa. 612, Eshleman v. Martic Township, 152 Pa. 68, and Elder v. Lykens Valley Coal Co., 157 Pa. 490. We see no reason why that rule should not apply in this case.

Judgment reversed and venire de novo awarded.