# Gibson v. Bessemer & Lake Erie Railroad Company, Appellant.

*Appeals—Assignments of error—Improper assignments—Superior Court.*

1. On an appeal from a judgment of the Superior Court, assignments of error are improper which merely allege error upon the part of the trial court, and not by the Superior Court.

2. On such an appeal an assignment of error is improper which specifies error by the Superior Court in not sustaining the assignments of error filed in that tribunal, but includes eight assignments under the one head, instead of assigning the overruling of each assignment separately.

*Bailment—Contract—Livery stable keeper.*

3. The relation between a livery stable keeper and one who hires from him a horse and carriage, is that of bailor and bailee, and the contract between them for the hire and use of the chattels constitutes a bailment.

*Negligence—Joint tort feasors—Bailment—Horse—Railroads.*

4. Where the owner of a livery stable lets out a horse and buggy and the horse is killed at a grade crossing by the joint negligence of the bailee and the railroad company, the negligence of the bailee is not to be imputed to the owner of the horse, so as to prevent him from recovering from the railroad company

*Negligence—Railroads—Grade crossings—Case for jury.*

5. In an action against a railroad company to recover damages for the killing of a horse at a grade crossing of a busy street of a town, the case is for the jury where the evidence shows that the engine was going at the rate of from fifteen to twenty miles an hour, that it ran 300 or 400 feet after it hit the horse before it could be stopped, and three witnesses testify that no signal was given by the engine or otherwise, and that they were in a position to hear, and were listening, and would have heard, had any signal been given.

Argued Oct. 11, 1909. Appeal, No. 9, Oct. T., 1909, by defendant, from judgment of the Superior Court, April T., 1908, No. 38, affirming judgment of C. P. Butler Co., Sept. T., 1907, No. 26, on verdict for plaintiff in case of Martin L. Gibson v. Bessemer & Lake Erie Railroad Company. Before MITCH-

ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Appeal from judgment of the Superior Court.

*Errors assigned* appear from the opinion of the Supreme Court.

*Lev. McQuistion,* with him *C. L. McQuistion,* for appellant.—The pinch in this case is that Lantz was not driving a vehicle owned by a common carrier, but a private vehicle in which he had a special ownership and in violation of a fixed rule of law.  The rule that the negligence of the driver is not imputable to the passenger or guest has no application to cases where the injured party's conveyance is private: Carlisle Borough v. Brisbane, 113 Pa. 544; Winner v. Oakland Twp., 158 Pa. 405; Billet v. R. R. Co., 11 York Leg. Rec. 173.

No testimony was adduced showing negligence on part of defendant, and the court's charge to the jury was inadequate: Holden v. Penna. R. R. Co., 169 Pa. 1; Knox v. Ry. Co., 202 Pa. 504; Hess v. R. R. Co., 181 Pa. 492; Urias v. Penna. R. R. Co., 152 Pa. 326; Newhard v. Penna. R. R. Co., 153 Pa. 417; Childs v. Penna. R. R. Co., 150 Pa. 73; Dryden v. Penna. R. R. Co., 211 Pa. 620.

*John R. Henninger,* for appellee.—That the negligence of a bailee is not the negligence of the bailor is declared by many decisions of the federal courts, this court and the courts of adjoining states: Connor v. Penna. R. R. Co., 24 Pa. Superior Ct. 241; Colligan v. Penna. R. R. Co., 214 Pa. 229; Little v. Hackett, 116 U. S. 366 (6 Sup. Ct. Repr. 391); N. Y., etc., R. R. Co. v. N. J. Elec. Ry. Co., 60 N. J. L. 338 (38 Atl. Repr. 828); N. Y., etc., R. R. Co. v. Steinbrenner, 47 N. J. L. 161.

The testimony of witnesses listening for trains at a crossing and hearing none, is of a higher grade than mere negative testimony, and is sufficient to require the submission of the evidence to the jury: Longenecker v. Penna. R. R. Co., 105 Pa. 328; Crane v. R. R. Co., 218 Pa. 560; Corcoran v. R. R. Co., 203 Pa. 380; Winterbottom v. R. R. Co., 217 Pa. 574.

OPINION BY MR. JUSTICE POTTER, January 3, 1910:

This was an action of trespass brought in the court of common pleas of Butler county by Martin L. Gibson against the Bessemer & Lake Erie Railroad Company, to recover damages for the killing of plaintiff's horse and for injuries to his buggy and harness alleged to have been caused by the negligence of defendant's servants. Upon appeal to the Superior Court the judgment was affirmed, and from this judgment of the Superior Court the present appeal was taken.

It appears that the plaintiff was the owner of a livery stable in the borough of Butler. On June 25, 1906, he let for hire a horse and buggy to one Lantz, who with a companion named Nicholas, drove through the town. In crossing the tracks of the defendant company where they intersect at grade with Main street, a public street of the borough, the horse and buggy were struck by a tender attached to one of the defendant's engines which was running backward at the time. The horse was killed and the buggy and harness badly damaged. Both Lantz and Nicholas admitted on cross-examination that they did not stop before driving upon the railroad track. They both testified that they were struck by the tender of an engine, running backward at a speed of fifteen or twenty miles an hour; that there was no bell rung nor whistle sounded, nor warning of any kind given them of the approach of the engine, and that there was no flagman or electric bell at the crossing. Another witness, George Howard, who was on the opposite side of the crossing and saw the locomotive approaching, testified that he did not hear any whistle blown or bell rung, and saw no flagman.

Both the trial court and the Superior Court held that the driver of the buggy was by his own admission guilty of contributory negligence, but that such negligence was not imputable to the plaintiff and did not affect his right to recover for injuries to his property caused by defendant's negligence.

We must again call the attention of counsel to the proper form of assignments of error in an appeal from the judgment of the Superior Court, as recommended in Mellick v. Penna. R. R. Co., 203 Pa. 457. In the present case, the first, second

and third assignments merely allege error upon the part of the trial court, and not by the Superior Court. The fourth assignment does specify error by the Superior Court in not sustaining the assignments of error filed in that tribunal, but it includes eight assignments under the one head, instead of assigning the overruling of each assignment separately. This is not in accordance with the practice recommended in Mellick v. Penna. R. R. Co., 203 Pa. 457, and is a violation of rule 29, which requires each error relied on to be specified particularly and by itself. The last two assignments do allege error, in the affirmance by the Superior Court of the judgment of the court of common pleas.

As to the main question raised,—the relation between a livery stable keeper and one who hires from him a horse and carriage, we have no doubt but that it is that of bailor and bailee, and that the contract between them for the hire and use of the chattels constitutes a bailment. In 1 Bouvier's Law Dict. (Rawle's ed., 1897) 213, bailment is defined as "a delivery of something of a personal nature by one party to another, to be held according to the purpose or object of the delivery, and to be returned or delivered over when that purpose is accomplished." In Schouler on Bailments (3d ed., 1897), sec. 130, it is said: "In the bailment for hired use, the bailor, technically styled the 'letter,' shifts over into the party entitled to recompense, while the hirer, in turn becomes bailee. This bailment . . . . contemplates the temporary beneficial use of a chattel which the bailee must eventually return. . . . Our reports furnish few cases of consequence under this head, save in the instance of hiring a horse or carriage." In sec. 137 the author still discussing bailments for hire, further says: "Let us take, for example, a case by far the most familiar under this head to English and American courts, namely, that of a horse hired for use."

In the text-books treating of the law of bailments, constant reference is made to contracts for the hiring of horses and vehicles, as illustrating the contract of bailment. See, for example, Edwards on Bailments (3d ed., 1893), sec. 373, and Van Zile on Bailments (2d ed., 1908), sec. 119.

The weight of authority also seems to sustain the proposition that the negligence of a bailee for hire is not to be imputed to the bailor. In the work just quoted (Van Zile), one of the latest on the subject, in sec. 128, it is said: "The bailee does not stand in the place of the bailor; he does not represent him in such a relation as would render the bailor liable for his negligent acts, or for the negligent acts of his servants or agents; and so, while in an action brought by the bailee against third parties for injuries to the property, the third party may defend in the action upon the ground of contributory negligence upon the part of the bailee, his servants or agents; in an action by the bailor, who is the owner of the property, against a third party for injury to the bailment, the negligence of the bailee, or his servants or agents, would be no defense and would not prevent a recovery, for the reason that such negligence is not imputable to the bailor."

And in Edwards on Bailments (3d ed., 1893), sec. 392, it is said: "The hirer of wagons, or carriages and horses, receiving them into his custody to be used by him at his pleasure, becomes a bailee, and is in no sense a servant of the owner. He is responsible to the owner for the reasonable care of them, and to third persons for any negligence of his servants in the use of them. He is liable to third persons to the same extent as if he were the actual owner of the vehicles and teams used by him." And again, in 1 Thompson on Negligence (1901), sec. 512, it is said: "Unless the principles upon which the courts have at last settled have been grossly misconceived, the negligence of a bailee or his servants is not imputable to his bailor." As far back as the case of Bard v. Yohn, 26 Pa. 482, Justice KNOX stated the law as follows (p. 489) : "If one lets or hires to another a horse to be used exclusively for the purposes of the latter, the owner of the horse is in nowise responsible for the negligent manner in which the horse may be used."

There is a difference where the owner sends a driver to manage and control the team and vehicle, for in so doing the owner retains the control, and may well be held accountable for the action of the driver, his servant and agent. But in the present case no driver was furnished and the hirer assumed the care

and control of the horse. There was no relation of master and servant, or of principal and agent between the hirer and the liveryman, and the latter cannot be held responsible for the negligence of the former. Each must recover in his own right, if at all, and each must stand upon his own ground. Had Lantz, the hirer, brought suit and shown negligence by the defendant, and no negligence upon his own part, he could have recovered for damage to himself, but not for damage to the horse or vehicle. His right of action depended in no way upon that of the present plaintiff, nor does the right of recovery in the present action depend upon the right of the bailee to recover.

Counsel for appellant further contend that the plaintiff did not present sufficient evidence of negligence to justify the submission of the case to the jury. The record shows that plaintiff relied upon three witnesses to establish negligence. One testified in substance, that the horse was struck by the tender of an engine backing up towards the yard. The engineer gave no signal, did not ring the bell and did not blow a whistle. There was no watchman at the crossing nor any electric bell. There is considerable travel at the crossing. It is one of the busiest streets in town. The engine was traveling, in witness's judgment, fifteen or twenty miles an hour. It was going so fast that it ran 300 or 400 feet after they hit the rig before they could get it stopped.

Another witness said that he was in the buggy with Lantz; that there was no warning given of the approach of the engine to the crossing, either by blowing the whistle or ringing the bell, and that there was no flagman nor electric bell at the crossing. The crossing was on the extension of Main street in the borough of Butler at a point where there is a great deal of travel. The engine was traveling fast and it went on after it struck the horse, 300 or 400 feet before it came to a stop. Another witness testified that he was on the opposite side of the crossing watching the locomotive as it approached, and heard no whistle or bell. It thus appears that the evidence for the plaintiff was not merely negative. It was positive, and was given by witnesses who alleged that they were in

a position to hear, and were listening and would have heard, had the signals been given. This in connection with the testimony as to the speed of the locomotive, was sufficient to take the case to the jury, on the question of defendant's negligence. The credibility of the witnesses was for the jury.

The assignments of error are all dismissed, and the judgment of the Superior Court is affirmed.