Ference, Appellant, *v.* Booth and Flinn Company.

Argued March 27, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*James J. Lawler,* with him *James A. Geltz, Leo Daniels,* and *Prichard, Lawler, Malone & Geltz,* for appellants.

*Arthur M. Grossman,* with him *J. Wray Connolly, William S. Moorehead, Jr.,* and *Moorhead & Knox,* for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, April 23, 1952:

Booth and Flinn Company, a Pennsylvania Corporation, defendants, while constructing a road for the Commonwealth allegedly caused a subsidence of a higher road rendering it impassible and making it necessary for busses owned by plaintiffs to detour, with a resultant loss of patronage and increased expenses. To recover damages for the loss thus suffered plaintiffs brought this suit. At the conclusion of plaintiffs' evidence a non-suit was entered. This appeal is from an order refusing to remove that non-suit.

On November 30, 1944, defendant entered into a contract with the State Highway Department of the Commonwealth of Pennsylvania to extend the Ohio River Boulevard westwardly from Leetsdale to Ambridge in Allegheny County. The specifications pro-

vided for a fifty-foot wide divided highway to be located in the low ground north of the Pennsylvania Railroad tracks on the right bank of the Ohio River. In order to meet these specifications it was necessary to excavate at the foot of a steep hillside. Beaver Road was located some distance up that same hill and on July 24, 1945, while defendant was excavating at the foot of the hill a slide occurred which caused large fissures and cracks in Beaver Road resulting in its being closed to traffic on that date.

Plaintiffs, a partnership trading as Ohio River Motor Coach Company, operated a bus line between Aliquippa and Pittsburgh under a license issued by the Pennsylvania Public Utility Commission. The route used by plaintiffs under their certificate included the portion of Beaver Road affected by the slide. When Beaver Road was closed on July 24, 1945, plaintiffs were forced to use a detour which added twenty-nine and a half miles to each round trip. To eliminate that extra mileage they later adopted a shuttle system which required the passengers to walk a distance of some four hundred feet through the slide area. Finally, when complaints were received from passengers, they adopted a new detour which reduced the added distance to twenty-four and a half miles per round trip. This last system was used until defendant finished clearing the slide area on November 30, 1945, and Beaver Road was re-opened to traffic.

It is self evident that the additional mileage resulted in added expenses to plaintiffs and it is equally obvious that the inconvenience to passengers would result in a loss of trade to plaintiffs. The learned court below held that these losses were *damnum absque injuria* and accordingly entered a non-suit. We are in accord with that conclusion.

The evidence establishes that defendant was an independent contractor in the construction of the Ohio

River Boulevard extension. The lower court so concluded and that conclusion is not questioned here. Nor could it be in view of the fact that defendant was to furnish and pay for all labor, materials and equipment and its compensation in turn was based on the completed job. The mere fact that the Commonwealth maintained an engineer on the job to see that the plans and specifications were followed was not sufficient to establish defendant as an agent.

It is hornbook law that the immunity from suit of the sovereign state does not extend to independent contractors doing work for the state. But it is equally true that where a contractor performs his work in accordance with the plans and specifications and is guilty of neither a negligent nor a willful tort, he is not liable for any damage that might result: 40 C. J. S., Highways, §212, p. 208.

At the trial plaintiffs conceded that the slide was not caused by any negligence on the part of defendant. They argue, however, that defendant did cause the slide which obstructed Beaver Road while in the performance of its contract, and having caused the slide, defendant was under a duty to remove it within a reasonable time. Plaintiffs conclude from this that what constituted a reasonable time under the circumstances was a question for the jury.

For purposes of considering the propriety of granting a non-suit, it must be taken as established that defendant caused the slide which damaged Beaver Road. The evidence shows that no slides had occurred in this area at least within the past nine years but that in March of 1945, while the work was in progress, a slide occurred and that the second and more severe slide which is here complained of occurred while defendant was working at the foot of the hillside in that area. Certainly in the present state of the record, that evidence

is sufficient to support the inference contended for by plaintiffs.

We cannot agree that the obstruction to Beaver Road, while defendant was properly carrying out the specifications of its contract with the State, constituted an immediate nuisance requiring its removal in the shortest possible time. To reach the result sought by plaintiff on these facts would compel us to so hold.

The right to obstruct a public road is, of course, extremely limited but where the obstruction is necessarily caused by the construction of a new road it does not constitute a nuisance unless it is unreasonably prolonged: *Mellick v. Railroad Co.*, 203 Pa. 457, 53 A. 340; *Lund v. St. Paul M. & M. Ry. Co.*, 31 Wash. 286, 71 P. 1032; *Jones v. Hayden*, 310 Mass. 90, 37 N. E. 2d 243. This rule is particularly well stated in *Lund v. St. Paul M. & M. Ry. Co.*, supra, where the Supreme Court of Washington said: "The city had the undoubted right to close the street for the purpose of building the bridge, and the obstruction occasioned thereby could not within a reasonable time have been classified as a nuisance. The city delegated the respondent company to make the improvement, and thereby vested it with authority to exercise the privileges belonging to the city in the premises. Therefore, *as long as respondent exercised reasonable diligence, the obstruction could not constitute a nuisance. But, if want of care and diligence existed, then the obstruction was no longer a necessity, and became a nuisance.*" (Italics added).

Here, it cannot seriously be argued that the obstruction of Beaver Road was unnecessary. Defendant was properly carrying out its contract with the Commonwealth when it caused the slide. Since plaintiffs concede that defendant was guilty of no negligence, in the way it performed the work, the inference is inescapable that the slide was a necessary result of fol-

lowing the plans and specifications of the contract. The only remaining question is whether the obstruction was removed within a reasonable time.

The evidence shows that with the exception of Sundays, holidays and days when the weather made work impossible, defendant was clearing in the slide area every day from July 24, 1945, when the slide occurred, until November 30, 1945, when Beaver Road was reopened. During that period defendant worked the standard eight-hour day and the job of clearing the slide consumed eighty-four of such working days. From one to three power shovels were used in that operation at all times depending on the working space in the area on a particular day. Plaintiffs produced an expert witness who testified that had defendant employed three eight-hour shifts the job could have been completed in twenty-eight days. It is on the basis of that testimony that plaintiffs argue defendant did not clear the obstruction in a reasonable time.

Such evidence establishes only that defendant might have done the work faster but it is not evidence from which a jury could be allowed to find that defendant did not do the work within a reasonable time. While the law is quick to protect a person from harm caused by unreasonable delay, it must be cautious not to impose standards which are so high as to be unrealistic. In this case, to place upon defendant the duty of working around the clock to clear the slide would be unreasonable and unconscionable. In fact there is nothing in this record to show that defendant did not act with due diligence in working in the normal manner. We are all well aware that in 1945 both labor and equipment were difficult to obtain. The same witness who testified that defendant would have finished the job more quickly by employing three shifts testified further that he did not know whether the labor was available at that time for the extra shifts. Certainly,

then, his testimony amounted to nothing more than the arithmetical deduction that if one shift could complete the job in eighty-four working days, three shifts could complete it in one third that time or twenty-eight working days.

Plaintiffs not only failed to prove that it was reasonable to require defendant to work three shifts but also failed to show that it was possible under the circumstances then existing. On the contrary, the record shows that defendant cleared the obstruction within a reasonable time. On these facts, that is all the law required.

Order affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

May a contractor, engaged in the construction of a public highway, delay his work unnecessarily and escape responsibility for the losses such delay inflicts upon a public carrier charged with the duty of using that highway for the public welfare?

The Ohio River Motor Coach Company, plaintiff in this case, held a certificate of public convenience from the Pennsylvania Public Utility Commission for transportation of passengers by motor coach between Aliquippa and Pittsburgh. The sliding and disintegration of Beaver Road for a certain distance compelled the Coach Company to reroute its bus line, adding 29 miles to its regular route. This rerouting not only worked havoc with the plaintiff's schedule but required it to put on extra buses and increase its number of employes, all of which added heavily to its running expenses and seriously reduced its revenues.

The defendant Booth & Flinn Company was engaged in extending the Ohio River Boulevard for the State Highway Department under a contract which required it to clean up the slide and reactivate the Beaver Road

for travel. The defendant undertook to do this, but it is the plaintiff's contention that it did the work so negligently and slothfully that 130 days were consumed in a job which could have been completed in 28 days.

The defendant company owed no contractual duty to the plaintiff to accelerate the rehabilitation of Beaver Road. It did, however, have the responsibility, which everyone has toward the public, of not unnecessarily impeding traffic on Beaver Road or any highway.

Nothing can be more absolute than the right of the owner of a house to repair it in such manner as he chooses, and the public must submit to the inconvenience occasioned by that repair work. But, as far back as 1812, it was held in England, whence came our common law, that "if this inconvenience is prolonged for an unreasonable time, the public have a right to complain, and the party may be indicted for a nuisance." *Rex v. Jones*, 3 Campbell's Reports 229.

The people of Pennsylvania are invested with an inalienable right to the free and unrestricted use of its highways. So aware were the lawmakers of this State of the imperative need to keep the flow of traffic on the highways uninterrupted that they included in the Act of 1836, June 13, P. L. 551, Section 24 (36 P.S. 2014), the provision: "Whenever the whole or any part of a road shall be changed or supplied, the same shall not be shut up or stopped until the road laid out to supply the place thereof shall be actually opened and made."

This Act was cited with approval in the case of *Mellick v. Pennsylvania Railroad*, 203 Pa. 457, 53 A. 340: "While we might hesitate to say that there may not be a case of necessity so absolute as to permit the temporary closing of the old road before the actual opening of the new, yet the necessity must be real,

must be clearly proved, and the onus of so proving it was on the plaintiff." (the contractor in that case.)

So long as the closing of the road answers an obvious need, as certainly the temporary barricading of Beaver Road responded to the exigencies of the occasion, anyone who is injured by that circumstance falls within the unfortunate situation recognized in the law as *damnum absque injuria,* but once the necessity passes, the roadblocker is answerable to the public as much as if he had capriciously and wantonly torn a trench across a perfectly functioning roadway.

Since it cannot be questioned that the tortious blocking of a highway will render the tort-feasor liable in damages to anyone who suffers because of that tort, it is equally clear that liability follows when the reasoning for the legitimate blocking ceases and an illegitimate blocking begins.

It is to be presumed from the lower court's decision that the period of 130 days was regarded as a reasonable time within which to repair the Beaver Road. Suppose Booth & Flinn had taken, under the same circumstances, 200 days or even a year or more to complete the operation. Somewhere along the line the defendant would then have lost its cloak of immunity. The plaintiff claims that the cloak was lost long before the 130 days expired. It could well be that the jury, had it been permitted to decide the issue, would have returned a verdict for the defendant, saying that 130 days for the colossal job involved was not an undue delay and the defendant would have been absolved from any blame. But, on the other hand, it could have found that the defendant was lackadaisical in the performance of its obligation to the public, that the initial delay of 30 days in starting the cleanup was inexcusable and that the plaintiff company, because of the negligence of the defendant company, was entitled to damages for the losses it admittedly suffered.

Taking all the proved facts in the case and all the inferences to be drawn therefrom as favoring the plaintiff, as we are required to do in a review of this kind, I believe it made out a prima facie case for damages and that it was error to withdraw this issue from the jury.

I would remove the nonsuit and order a new trial.