Valley Forge Gardens, Inc. *v.* James D. Morrissey,
Inc., Appellant.

Argued April 23, 1956. Before STERN, C. J., JONES,
BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

478

*Louis F. Floge*, with him *Josephine H. Klein, Bernard G. Segal*, and *Schnader, Harrison, Segal & Lewis*, for appellant.

*Ralph S. Croskey*, with him *Croskey & Edwards*, for appellee.

OPINION BY MR. JUSTICE JONES, June 25, 1956:

The Valley Forge Gardens, Inc., sued James D. Morrissey, Inc., in trespass to recover damages for the alleged injury by the defendant of five artificial ponds of the plaintiff which it maintained for ornamentation of its Memorial Park Cemetery in the vicinity of King of Prussia in Montgomery County.

The defendant corporation, pursuant to a public contract with the State Highway and Bridge Authority (created by the Act of April 18, 1949, P.L. 604, 36 PS §3601), constructed a portion of the "Philadelphia Expressway"—a highway running from the eastern extension of the Pennsylvania Turnpike at King of Prussia to Philadelphia. Approximately a quarter of a mile to the north of the plaintiff's cemetery the defendant contractor was required, in accordance with its contract and related plans prepared and supplied by the State Highway Department, to construct a fill some 35 feet high and extending 1,000 to 1,500 feet in length. The fill necessarily crossed, at right angles, a narrow (2' wide) stream, which fed the plaintiff's ponds and which was conducted through the made embankment by a steel pipe culvert. The plaintiff's ponds were some 1,200 feet distant from the right-of-way of the Expressway, and the stream in its intervening meandering passed under two other highways. By the time the defendant had completed its contract, dirt and silt, washed by the natural effects of erosion from the slope of the fill, had been carried by the stream

into the plaintiff's ponds and eventually filled them. The plaintiff had the ponds dredged and built a desilting basin to prevent their being filled again in such a manner. The cost of that work was the quantum of the damages which the plaintiff sought to recover in the instant suit.

The plaintiff, in its amended complaint, alleged that the damage to its ponds and the deposit of dirt and silt therein were the result of the defendant's negligent construction of the highway fill in disregard of the possible effects of erosion and that, in thus filling the ponds with dirt and silt, the defendant was guilty of trespass *quare clausum fregit*. The defendant in its answer denied that it had constructed the fill negligently or carelessly but, on the contrary, averred that it had performed the work in a careful, lawful and prudent manner in accordance with its contract with the State Highway and Bridge Authority and the accompanying plans and specifications. The defendant joined the Authority as an additional defendant, but the latter's preliminary objections were sustained on the ground that the Authority was an instrumentality of the Commonwealth and, therefore, immune from suit in the absence of specific statutory provision. No appeal was taken from the order eliminating the Authority as an additional defendant.

At trial, the plaintiff offered no proof that the defendant had performed its work under the contract negligently. That issue was accordingly withdrawn from the jury by the learned trial judge with the consent of counsel and is no longer in the case. The defendant had affirmatively proved that all of its work had been done in strict accordance with the contract and the plans specifications. The trial judge submitted the case to the jury for two special findings,—"1. Do you find from the evidence that this embankment

washed down on the plaintiff's property?" and "2. What was the damage to the plaintiff in attempting to correct the result of the wash-down of that earth? How many dollars?" The jury answered "yes" to the first question and, in answer to the second, fixed the amount of the damage to the plaintiff in dollars. The question of law as to whether the plaintiff had a right to recover against the defendant in the premises was reserved by the court which, thereafter, answered the question in the affirmative and entered a judgment for the plaintiff in the amount fixed by the jury's special verdict. On exceptions, the judgment was confirmed by the court en banc, and the defendant appealed.

The case is governed by the rule enunciated in *Ference v. Booth and Flinn Company*, 370 Pa. 400, 403, 88 A. 2d 413, where Mr. Chief Justice DREW, speaking for the court, declared that "It is hornbook law that the immunity from suit of the sovereign state does not extend to independent contractors doing work for the state. But it is equally true that where a contractor performs his work in accordance with the plans and specifications and is guilty of neither a negligent nor a willful tort, he is not liable for any damage that might result: 40 C.J.S., Highways, §212, p. 208."

The facts in the *Ference* case were that the defendant corporation, while constructing a road for the Commonwealth, caused a slide of a steep hillside. The slide, in turn, produced large fissures and cracks in a public highway, higher up on the hillside, which was open to travel while the new construction work was going on below. The damage thus done to the existing public highway necessitated that it be closed. The closure entailed great loss and expense to the plaintiffs who were the operators of a bus line with a certificated route over the closed highway. The plaintiffs'

buses were compelled to make detours of considerable additional mileage with resultant loss of passenger revenues and at increased expense of operation. It was to recoup such losses that the plaintiffs sued the defendant company for damages on the theory that the defendant was guilty of maintaining a nuisance in unnecessarily delaying the repair of the public highway and, consequently, in not getting it open for travel within a reasonable period of time. The defendant, in performing its construction contract with the Commonwealth according to the plans and specifications, had been compelled to excavate at the foot of the steep hillside, just as it had done; and the plaintiffs conceded that the slide was not caused by any negligence on the part of the defendant. We affirmed the judgment of nonsuit entered below because of the contractor's non-liability.

In every jurisdiction in this Country where the question has been passed upon (and that includes the Supreme Court of the United States, other Federal courts and courts of approximately half of the States), it has been uniformly held that in the absence of negligence or wilfully tortious conduct on the part of an independent contractor, he is not liable for injury to another's property which is caused by the performance of his contract with a governmental instrumentality in accordance with its plans and specifications. [1] There has not been cited to us, nor has our

---

[1] See, e.g., *Yearsley v. W. A. Ross Construction Co.,* 309 U.S. 18; *Burt v. Henderson,* 152 Ark. 547, 238 S.W. 626, 627; *Veterans' Welfare Board v. City of Oakland,* 74 Cal. App. 2d 818, 169 P. 2d 1000, 1009; *Maezes v. City of Chicago,* 316 Ill. App. 464, 45 N.E. 2d 521, 526-527; *Sherman v. Miller Const. Co.,* 90 Ind. App. 462, 158 N.E. 255, 257; *Newton Auto Salvage Co. v. Herrick,* 203 Iowa 424, 212 N.W. 680, 681; *Tillotson v. Fair,* 160 Kan. 81, 159 P. 2d 471, 476; *Adkins v. Harlan County,* 259 Ky. 400, 82 S.W. 2d 425; *Nelson v.*

independent research disclosed, a single case holding to the contrary. [2]

The foreseeable effects of erosion on the fill in the vicinity of the stream was a matter for the Authority to contemplate and guard against. In *Nelson v. Mc-Kenzie-Hague Co.,* 192 Minn. 180, 189, 256 N.W. 96, 100, the Supreme Court of Minnesota pertinently said,— "That the state itself may have proceeded wrongfully in not foreseeing the consequential damage to plaintiffs' property and making provision for its compensation supports not at all the conclusion that either the highway commissioner or defendant [contractor] has committed wrong in proceeding with the work in the only way it could be done. Having committed no wrong, defendant should not be subjected to liability. It is not saved by the state's immunity from suit, but by its own innocence of wrongful acts resulting in liability as for tort."

The appellee contends, however, that, even conceding the rule as to the non-liability for injury to another which a contractor inflicts while engaged in the performance of a public contract in strict accordance

---

*McKenzie-Hague Co.,* 192 Minn. 180, 256 N.W. 96, 98; *Benner v. Atlantic Dredging Co.,* 134 N.Y. 156, 31 N.E. 328, 329; *Moore v. Clark,* 235 N.C. 364, 70 S.E. 2d 182, 185; *Wood v. Foster & Creighton Co.,* 191 Tenn. 478, 235 S. W. 2d 1, 3; *Tidewater Construction Corp. v. Manly,* 194 Va. 836, 75 S.E. 2d 500, 502.

[2] Of the two cases from outside jurisdictions which the learned court below cited and quoted from with approval, the one (*Finnell v. Pitts.,* 222 Ala. 290, 132 So. 2) involved an abuse of authority by the State's officers which resulted in an actual taking of the injured party's land; the other (*Bader v. Mills & Baker Co.,* 28 Wyo. 191, 201 P. 1012) was concerned with an independent contractor's willful encroachment on the retaining bank of complainant's irrigation ditch to his damage without authorized direction by the State Highway Commission for which the contractor was building a road elsewhere.

with the plans and specifications and without neglect or wilfully tortious conduct, nevertheless the contractor is liable in the instant case as for "a wilful tort" because of his trespass q.c.f. But, there is an obvious and material difference between intending an act and intending the consequences of an act. As recognized in *Bowman v. Pennsylvania R. R.*, 299 Pa. 558, 567, 149 A. 877, cert. den. 282 U.S. 849,—"To be wilful the harm must have been intentionally inflicted." It is inherent in the theory of trespass q.c.f. that "The intention which is required to make the actor liable . . . is an intention to enter upon the particular piece of land in question irrespective of whether the actor knows or should know that he is not entitled to enter thereon": Restatement, Torts, §163, comment *b*, quoted with approval in *Kopka v. The Bell Telephone Company of Pennsylvania*, 371 Pa. 444, 450, 91 A. 2d 232. A voluntary act may result in injury to another, but it is only when *the harm* is intentionally inflicted that there is a "wilful" tort. The facts of the instant case well illustrate the distinction. While the non-negligent intentional construction by the defendant resulted in harm to the plaintiff in a way sufficient to support a charge of trespass q.c.f., it cannot be contended that the defendant intended to invade the interests of the plaintiff when it intentionally constructed the fill. Hence, there was no wilful tort.

The statement that the State's or its instrumentality's immunity from suit is not available to the contractor who performs work for it in conformity with a contract and without negligence is largely a matter of semantics. It is true, as stated, that the contractor may not plead such immunity. But, if the contractor, in privity with the State or its instrumentality, performs the contract work which the State is privileged to have done, the privilege operates to relieve the con-

tractor from liability to third persons except for negligence or wilful tort in performance of the work.

In *Yearsley v. W. A. Ross Construction Co.,* 309 U.S. 18, it was held that the defendant company, which performed work for the improvement of river navigation in conformity with its contract therefor with the Federal Government, was not liable for injury to private riparian land. Speaking for the court in that case, Mr. Chief Justice HUGHES said (p. 20-21) "it is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." The principle is equally applicable here. It is undisputed that the work contracted for by the Authority was within its power constitutionally conferred by the legislature. See, also, Annotation, 69 A.L.R. 489, 496; 40 C.J.S., Highways, §212, p. 208; and 27 Am. Jur., Independent Contractors, §53, p. 532.

The rule could not be otherwise. As recognized by the Supreme Court of Washington in *Muskatell v. Queen City Construction Co.,* 3 Wash. 2d 200, 100 P. 2d 380, 381, if the rule were otherwise, "the bidding on contracts with a [governmental instrumentality] would be somewhat hazardous, because the contractor could never know what the amount of damages which he might have to pay to abutting property would be." Also, as stated by the Supreme Court of Appeals of Virginia in *Tidewater Construction Corp. v. Manly,* 194 Va. 836, 75 S.E. 2d 500, 502,—"The contractor's bid is based upon the theory that the public agency has a legal right to submit its plans and specifications for the work to be performed, and that if he performs the work in accordance with the plans and specifications he will incur no liability in the absence of negligence."

The learned court below was of the opinion that this case was ruled by our decision in *Ewalt v. Pennsylvania Turnpike Commission*, 382 Pa. 529, 115 A. 2d 729. With that, we do not agree. It is true that the instant case could not be more on all fours with the *Ewalt* case than it is on its *facts*. Ewalt sued to recover damages to the ornamental ponds on his land situated some 600 feet off the right-of-way of the turnpike, the damage being due to the alluvial deposit in the ponds by a stream that carried eroded soil from the slope of the embankment of the turnpike. But, there is a very crucial legal difference between the two cases. *Ewalt's suit was not against the contractor,* who had built the adjacent portion of the turnpike, *but was against the Turnpike Commission itself.* We held that the Commission was liable for the proven consequential damages because the Western Pennsylvania Turnpike Extension Act of 1941, P.L. 101, under which that section of the turnpike was constructed, expressly charged the Commission with the payment of compensation for property damaged or destroyed by the construction, operation and maintenance of the turnpike. Whether the State Highway and Bridge Commission would be liable for the damage to the plaintiff's ponds is not involved in this case. The *Ewalt* case is therefore not in point.

Judgment reversed and here entered for the defendant.

Mr. Justice MUSMANNO dissents.