Joyce and Harold **COOLBAUGH**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, Orig. Def.**

v.

**Slusser Brothers Trucking & Excavating Co., Inc., Addtl. Def.**

v.

**Joyce and Harold Coolbaugh, Appellant.**

**Slusser Brothers Trucking & Excavating Co., Inc., Orig. Def.**

v.

**Commonwealth of Pennsylvania, Department of Transportation, Addtl. Def.**

Superior Court of Pennsylvania.

Argued Dec. 11, 2002.
Filed Jan. 24, 2003.

Derek R. Layser, Philadelphia, for appellants.

Timothy G. Lenahan, Scranton, for Slusser Brothers Trucking & Excavating, appellee.

Before JOHNSON, KLEIN, and KELLY, JJ.

OPINION BY JOHNSON, J.

¶ 1 Joyce and Harold Coolbaugh (the Coolbaughs) appeal the trial court's order

granting summary judgment in favor of Slusser Brothers Trucking and Excavating Co., Inc. (Slusser Brothers). The Coolbaughs contend that the court erred in finding Slusser Brothers entitled to "immunity" pursuant to the "government contractor defense" stated in *Ference v. Booth & Flinn Co.*, 370 Pa. 400, 88 A.2d 413 (1952), and *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, 385 Pa. 477, 123 A.2d 888 (1956). Following review of the record, we find questions of material fact, which, pending resolution by the factfinder, preclude application of the *Ference/Valley Forge* defense. Accordingly, we reverse the court's order granting summary judgment.

¶ 2 This matter arises out of a 1996 automobile accident in which Joyce Coolbaugh sustained severe injury to her spine resulting in permanent disability. Coolbaugh lost control of her car while driving in heavy rain on a portion of Interstate Route 81 in Luzerne County. The car plunged over an embankment, rolling end-over-end. As a result of the accident, Coolbaugh sustained a fracture of her cervical spine and was rendered quadriplegic. Coolbaugh asserts that her car hydroplaned due to improper water drainage on the road surface which could have been avoided had the Pennsylvania Department of Transportation (PennDOT) properly sloped, graded, grooved and otherwise prepared the road for wet weather.

¶ 3 Accordingly, the Coolbaughs commenced this action naming PennDOT as original defendant. PennDOT, by complaint pursuant to Rule 2252(d) joined Slusser Brothers, which one year prior to the accident, completed a re-surfacing project on that portion of the highway where Coolbaugh's mishap occurred. In its Rule 2252(d) Complaint, PennDOT sought indemnity and contribution, asserting that Slusser Brothers both failed to follow contract specifications required for the project and failed to complete the project in a workmanlike manner. Slusser Brothers denied the material allegations of PennDOT's Rule 2252(d) claim and asserted, as an affirmative defense, its compliance with all provisions of PennDOT's contract specifications. Further, Slusser Brothers asserted a claim for indemnification against PennDOT, asserting that it was so entitled under the terms of the construction contract.

¶ 4 During the pendency of the action in the trial court, PennDOT settled the Coolbaughs' claims against it. Subsequently, Slusser Brothers filed the Motion for Summary Judgment at issue here, asserting that its compliance with the terms of PennDOT's road construction contract entitled it to immunity from liability as a government contractor on the Coolbaughs' third-party tort claims. The Coolbaughs responded, contending that the "government contractor" defense upon which Slusser Brothers relies does not apply to non-military contractors and that, moreover, the evidence demonstrated questions of material fact concerning whether Slusser Brothers had completed the re-surfacing project in a workmanlike manner. In support, the Coolbaughs produced two expert engineering reports attesting that Slusser Brothers had improperly graded the road surface at the scene of the Coolbaughs' accident, allowing a depression in the traffic lanes in which water pooled during stormy weather and caused the Coolbaughs' car to hydroplane. Notwithstanding the Coolbaughs' expert reports calling Slusser Brothers' performance into question, the trial court, the Honorable Ann Lokuta, concluded that Slusser Brothers was entitled to immunity on the basis of its alleged fulfillment of PennDOT's contract specifications. Accordingly, the court granted Slusser Brothers' motion and entered summary judgment against the Cool-

baughs. The Coolbaughs then filed this appeal.

¶ 5 The Coolbaughs raise the following questions for our review:

1. Whether the trial court committed legal error and/or abuse[d] its discretion by granting Slusser Brothers' motion for summary judgment on the basis that Slusser Brothers may not be held liable to plaintiffs by reason of the "Government Contractors Defense"?

2. Whether the trial court committed legal error and/or abuse[d] its discretion when it granted Slusser Brothers' motion for summary judgment on the basis that plaintiffs failed to set forth a *prima facie* case of negligence against defendant Slusser Brothers?

Brief for Appellants at 4.

¶ 6 Our scope of review of an order granting summary judgment is plenary. *See Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership,* 764 A.2d 1100, 1103 (Pa.Super.2000), *appeal denied,* 566 Pa. 664, 782 A.2d 546 (2001). Accordingly, we must consider the court's order in the context of the entire record. *See Basile v. H & R Block, Inc.,* 777 A.2d 95, 101 (Pa.Super.2001). "Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion." *Id.* "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or [rules] in a manner lacking reason." *Miller v. Sacred Heart Hosp.,* 753 A.2d 829, 832 (Pa.Super.2000).

¶ 7 In their first question, the Coolbaughs assert that the trial court abused its discretion in finding the "Government Contractors Defense" dispositive of their claims against Slusser Brothers. Brief for Appellants at 15. The court concluded that this defense, premised on Slusser Brothers' asserted compliance with construction specifications generated by PennDOT, precluded liability because "Slusser followed those plans and specifications to Penndot's complete satisfaction." Trial Court Opinion, 2/6/02, at 10. The Coolbaughs argue that this defense bars liability, notwithstanding a contractor's compliance with government specifications, only upon proof by the defendant that its performance was not otherwise negligent. Brief for Appellants at 19. Upon consideration of governing caselaw, we concur in the Coolbaughs' conclusion.

¶ 8 Our Supreme Court has confirmed that contractors engaged by state government do not share in the statutory immunity from suit conferred on the government itself. *See Conner v. Quality Coach, Inc.,* 561 Pa. 397, 750 A.2d 823, 833 (2000) (declining to extend statutory shield of immunity to civilian government contractor who manufactured defective product in accordance with government design specifications). The Court has also recognized, however, that public works contractors who perform in conformity with government specifications for contracted work may be insulated from liability to third parties seeking consequential damages in certain tort actions. *See id.* at n. 17.

¶ 9 Accordingly, in *Ference v. Booth & Flinn Co.,* the Supreme Court concluded that the plaintiff operators of a bus company could not recover on a claim of nuisance against a public works contractor for damages caused by the contractor's delay in clearing a landslide over the highway on which the company's buses traveled. *See* 88 A.2d at 414. Significantly, the plaintiff

conceded during trial that the contractor had not caused the landslide and had not been negligent in its efforts to remove it. *See id.* The Court reasoned accordingly:

> Since plaintiffs concede that [the contractor] was guilty of no negligence, in the way it performed the work, the inference is inescapable that the slide was a necessary result of following the plans and specifications of the contract. The only remaining question is whether the obstruction was removed with[in] a reasonable amount of time.

*Id.* at 415. Because the plaintiff failed to introduce sufficient evidence to establish an amount of time in which the contractor should have removed the obstruction, the trial court entered a non-suit and the Supreme Court affirmed. *See id.*

¶ 10 Thereafter, in *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, the Supreme Court clarified the rule implied in *Ference. See* 123 A.2d at 889. In *Valley Forge Gardens*, the plaintiff cemetery sued a public works contractor to recover for the effects on its land of erosion from an adjoining road construction site. *See id.* As in *Ference*, the plaintiff offered no evidence that the contractor was negligent in its execution of the construction project and withdrew the issue from the case at trial. *See id.* When, subsequently, the trial court entered judgment for the plaintiff against the contractor, the Supreme Court reversed. Significantly, the Court grounded its holding not on a grant of privilege or immunity, but on the absence of a viable claim of negligence where the contractor had complied with the project specifications. *See id.* at 890. The Court reasoned specifically:

> 'That the state itself may have proceeded wrongfully in not foreseeing the consequential damage to plaintiffs' property and making provision for its compensation supports not at all the conclusion

that either the highway commissioner or defendant [contractor] has committed wrong in proceeding with the work in the only way it could be done. Having committed no wrong, defendant should not be subjected to liability. *It is not saved by the state's immunity from suit, but by its own innocence of wrongful acts resulting in liability as for tort.*'

*See id.* at 890–91 (quoting *Nelson v. McKenzie–Hague Co.*, 192 Minn. 180, 256 N.W. 96, 100 (1934) (emphasis added)). Accordingly, the Court expressly conditioned its holding on the contractor's completion of its work free from negligence: *"if the contractor, in privity with the State or its instrumentality, performs the contract work which the State is privileged to have done, the privilege operates to relieve the contractor from liability to third persons **except for negligence or wilful tort in performance of the work"***. *Id.* at 891, (emphasis added).

¶ 11 Still later, the Supreme Court reaffirmed the centrality of a fault analysis to application of the "contract specifications" defense, amplifying the holding in *Valley Forge Gardens. See Lobozzo v. Adam Eidemiller, Inc.*, 437 Pa. 360, 263 A.2d 432, 435 (1970). In *Lobozzo*, the Court explained:

> The theory underlying the *Valley Forge Gardens* decision is that the Commonwealth has a privilege to have highways constructed, and that such privilege insulates a contractor who complies with the Commonwealth's plans and specifications from liability for damage caused by such construction, unless the contractor performs his work tortiously.
>
> *     *     *     *     *     *
>
> Thus under our present holding the insulation rule of *Valley Forge Gardens* applies in the absence of negligence, willfully tortious conduct, or activities,

such as blasting, for which liability without fault is imposed.

*Lobozzo,* 263 A.2d at 434–35. We conclude, accordingly, that the *Ference/Valley Forge* line of cases limits a public works contractor's liability for third-party tort claims only where the evidence establishes that the contractor complied with the technical specifications of the government contract *and* the evidence fails to establish the contractor's negligence in completing the work.

¶ 12 Upon review of the record before us, in light of the *Ference/Valley Forge* analysis, we find the contract specification defense an insufficient basis upon which to enter summary judgment for Slusser Brothers. As the Court recognized in *Lobozzo,* a public works contractor is entitled to insulation from liability on the basis of contract compliance only if the record does not support a question of negligence arising from the contractor's performance of the contracted work. *See Lobozzo,* 263 A.2d at 434–35; *see also Ference,* 88 A.2d at 414 (recognizing basis for contract specifications defense where plaintiff conceded that the contractor had not caused roadway obstruction and had not been negligent in efforts to remove it); *Valley Forge Gardens,* 123 A.2d at 889 (reversing judgment for plaintiff on the basis of contract specifications defense where plaintiff consented to withdrawal of negligence claim during trial). If the evidence establishes that the contractor did not complete the project in a workmanlike manner, the contractor's technical compliance with contract specifications will not insulate it from liability to third parties sounding in negligence. *Cf. Valley Forge Gardens,* 123 A.2d at 889. Stated differently, *fulfillment of the contract specifications does not necessarily satisfy the standard of care owed to the plaintiff in a negligence action.* Accordingly, if, at the completion of discovery, the evidence raises a question of material fact concerning the manner and extent to which the contractor breached a duty to the plaintiff, the contract specifications defense is not grounds for summary judgment. *See* Pa. R.C.P. 1035.2(1); *Basile,* 777 A.2d at 101 (stating that "summary judgment is improper if the evidence, viewed favorably to the plaintiff, would justify recovery under the theory it has pled").

¶ 13 Consideration of the evidence adduced in this case reveals significant questions concerning Slusser Brothers compliance with the requisite standard of care when it completed the resurfacing project for which PennDOT contracted. The Coolbaughs' expert witnesses, both of whom are registered professional engineers, provided timely written reports expressly criticizing the manner in which Slusser Brothers completed the contracted work, and opined that the contractor's dereliction created conditions that caused the Coolbaughs' crash.

¶ 14 The first of those experts, Dwight H. McLean, P.E., cited specific measurements of the highway surface in the Coolbaughs' lane of travel and explained the conditions that would result during rainfall.

Analysis of the data shows that the roadway cross-slope for the portion of the median lane from the lane line to the center of the median lane varied from zero (flat) to –0.015 ft./ft., with the average slope of –0.006 ft./ft., or *30 percent of PaDOT's minimum.* The cross-slope from center of lane to median edgeline varied from –0.007 ft./ft. to –0.018 ft./ft. with an average cross-slope of –0.012 ft./ft. or *60 percent of PaDOT's minimum.*

\*    \*    \*    \*    \*    \*

For rainfall intensities consistent with conditions described at the crash, the cross-slope conditions shown in the survey data would result in water depths in the northbound median lane in excess of those shown to cause "wheel spin-out."

According to PaDOT documents, the improper cross-slope extended for a significant length along northbound I–81. With the improper cross-slope and the descending longitudinal grade, water would be retained on the traveled way and in the path of a northbound vehicle for a significant distance.

The improper cross-slope of the northbound I–81 passing lane caused water to accumulate on the roadway, which subjected passing vehicles to hydroplaning and hydrodynamic drag.

Supplemental Report of the Joyce Coolbaugh Collision, D. Hugh McLean, P.E., 12/26/01, at 5 of 9 (Reproduced Record (R.R.) at 0477) (emphasis added). Significantly, this evidence raises a question of fact concerning not only Slusser Brothers' compliance with the appropriate standard of care in negligence, but also with the PennDOT specifications upon which the contractor later based its defense.

¶ 15 McLean noted also that the improper cross-slope measured after the crash did not appear in the 1965 design drawings for the highway, R.R. at 0475, and attributed the condition expressly to the manner in which Slusser Brothers had constructed the asphalt overlay in 1995:

The improper roadway drainage along the northbound passing lane in the area of the crash was the result of the overlaying of the roadway by Slusser Brothers, was not in accordance with established national and PaDOT standards, caused excess water to accumulate on the roadway, and resulted in a dangerous condition which caused the crash. R.R. at 0478.

¶ 16 Similarly, the Coolbaughs' second expert, Joseph P. Muldoon, P.E., also recited the improper cross-slope of the road as the cause of the Coolbaughs' crash and concluded that the related depression in the road surface could have occurred, in theory, only through a construction defect or heavy traffic loading. Report of Joseph B. Muldoon, P.E., 1/16/01, at 4 (R.R. at 0313). After eliminating any potential that traffic loading could have caused the depression in the location where it occurred, Muldoon concluded:

The pavement depression ... was formed when Slusser Brothers overlaid the pre-existing concrete surface with bituminous wearing course. *The causative factors would have included the failure to apply a scratch or leveling course to the existing concrete surface, maladjustment of the screed and/or uneven compaction of the overlay.*

R.R. at 0314 (emphasis added).

¶ 17 Although this evidence is not necessarily conclusive of liability on the Coolbaughs' claims, it does, at a minimum, raise a question of material fact concerning whether Slusser Brothers completed its work under the contract in a non-negligent manner. Under the *Ference/Valley Forge* line of cases, this question precludes application of the contract specifications defense. *See Lobozzo,* 263 A.2d at 434–35 (holding that "the insulation rule of *Valley Forge Gardens* applies in the absence of negligence...."). Moreover, under our Rules of Civil Procedure, such a question must be addressed by the factfinder and precludes summary judgment. *See* Pa. R.C.P. 1035.2 Note; *Basile,* 777 A.2d at 101 (stating that "summary judgment is improper if the evidence, viewed favorably

to the plaintiff, would justify recovery under the theory it has pled").

¶ 18 In their second question, the Coolbaughs contend that the trial court erred in concluding that they had not established a *prima facie* case of negligence. Brief for Appellants at 21. In this regard, the court expressly discounted opinions on causation expressed by the Coolbaugh's experts, which it found "fail[ ] to place any meaningful responsibility on Slusser." Trial Court Opinion, 2/6/02, at 11. The court then reached its own finding that "Slusser's work was performed in accordance with Penndot's specifications, was satisfactorily performed by Slusser in all respects, and accepted by Penndot as aforenoted." Trial Court Opinion, 2/6/02, at 12. We find the trial court's characterization of the plaintiffs' evidence unsupported by the record, and its apparent disposition of issues of fact beyond the scope of its authority in considering a summary judgment motion. *See Boring v. Erie Ins. Group*, 434 Pa.Super. 40, 641 A.2d 1189, 1191 (1994) (directing that on review of summary judgment motion "[t]he court is not to decide issues of fact but merely to determine whether such issues exist"). We need not reiterate the foregoing recitation of evidence to recognize the extent to which it substantiates questions of fact concerning the cause of the Coolbaughs' crash. *See discussion infra* (*citing* Supplemental Report of the Joyce Coolbaugh Collision, D. Hugh McLean, P.E., 12/26/01; Report of Joseph B. Muldoon, P.E., 1/16/01). We note, as well, that that same evidence contradicts the trial court's finding that "Slusser's work was performed in accordance with Penndot's specifications." *See* Supplemental Report of the Joyce Coolbaugh Collision, D. Hugh McLean, P.E., 12/26/01, at 5 of 9 (Reproduced Record (R.R.) at 0477). In view of this evidentiary record, we conclude that the trial court abused its discretion in finding that

the Coolbaughs failed to state a *prima facie* case with reference to causation. *See Miller v. Sacred Heart Hosp.*, 753 A.2d at 832.

¶ 19 For the foregoing reasons, we reverse the trial court's order granting summary judgment.

¶ 20 Order granting summary judgment REVERSED. Case REMANDED for further proceedings consistent with this Opinion. Jurisdiction RELINQUISHED.