## PINE v. INDEPENDENT NATURAL GAS CO. et al.

No. 23229.  Oct. 26, 1937.

Rehearing Denied Dec. 7, 1937.

Application for Leave to File Second Petition for Rehearing Denied Jan. 11, 1938.

Hiatt & Hannigan and C. B. McCrory, for plaintiff in error.

Chas. L. Yancey, G. C. Spillers, Donald L. Brown, E. M. Calkin, R. H. Hudson, John E. Curran, and R. B. F. Hummer, for defendants in error.

OSBORN, C. J. This action was instituted in the district court of Tulsa county by Independent Natural Gas Company, hereinafter referred to as plaintiff. against Forrest E. Gilmore Company, Aircraft Gasoline Corporation, and W. B. Pine, hereinafter referred to as defendants, wherein it was alleged that "defendants and each of them took and consumed plaintiff's gas in the total amount of 61,452,000 feet; that the reasonable market value of said gas * * * was 25c per thousand cubic feet, or a total of $15,363." Plaintiff sought judgment against each of defendants for said sum with interest. Issues were joined and the cause tried to a jury. A verdict was returned in favor of plaintiff against W. B. Pine for the amount sued for. From a judgment thereon, defendant Pine has appealed.

By virtue of a cross-petition filed in the action, the Forrest E. Gilmore Company recovered a judgment against plaintiff in the sum of $5,967.99. No question is raised regarding the propriety of said recovery.

By various assignments of error, defendant Pine has challenged the sufficiency of the evidence to support the judgment against him. There is considerable conflict in the evidence, but the verdict of the jury is conclusive as to the disputed facts.

It is our function to determine whether or not the verdict is reasonably supported by competent evidence.

In July, 1928, defendant Pine was the owner and operator of an oil and gas mining lease in the south half of the southeast quarter and northeast quarter of the southeast quarter of section 26, twp. 8 N., range 6 E., in Seminole county, upon which there were one or two producing wells. At about that time, pursuant to a contract entered into with Pine's agent, the Aircraft Gasoline Corporation constructed upon the Pine lease a plant for the purpose of extracting gasoline from casing-head gas. Under the terms of the agreement said corporation was to take the casing-head gas from the wells on the Pine lease, and after extracting the gas therefrom, the residue or dry gas was to be returned to Pine for fuel purposes and for the purpose of forced flowing of the wells.

It appears that Pine did not procure sufficient gas from the Aircraft Corporation to operate his lease, and for several months prior to November 1, 1928, he had been purchasing gas from the plaintiff company, which company owned a high pressure gas line running adjacent to Pine's lease. A meter had been set on the line of plaintiff company, which is referred to as the "Pine meter," and Pine received the gas through a line which connected with his own fuel system. All of the gas that passed through said meter prior to the date of November 1, 1928, was paid for by defendant Pine.

Prior to the times hereinabove mentioned, there was in operation at a point two and one-half miles south of the Pine lease, a gasoline extraction plant owned by Forrest E. Gilmore Company, which was a separate and distinct corporation from the Aircraft Gasoline Corporation above referred to, which corporation was headed by Forrest E. Gilmore. A short time prior to November 1, 1928, the Aircraft Gasoline Corporation made an arrangement with the Forrest E. Gilmore Company whereby the latter corporation agreed to assist the Aircraft Corporation in its contract with Pine. By the terms of the arrangement the Forrest E. Gilmore Company agreed to use some of the casing-head gas from Pine's lease and return the residue to Pine. Thereafter the Forrest E. Gilmore Company's line was connected into a "header" located upon the

Pine lease. The Aircraft Gasoline Corporation's gas lines were also connected into this "header," and there was an outlet therefrom into the Pine fuel system. It was Pine's theory that under this arrangement he would be furnished sufficient gas to operate his lease.

There is but little dispute in the evidence to the effect that Pine's agent or representative instructed plaintiff's agents on November 1, 1928, to close the meter. It appears that the meter was closed and that the meter reader made the following notation on the chart for that day:

"No gas. This company is using its own gas, but wants meter left so if their gas goes off, they will use Tri County Gas. P. B." (The Independent Natural Gas Company, a corporation, was at this time The Tri County Gas Company).

On the following day, November 2d, upon removal of the meter chart it was found that approximately the same daily quantity of gas had passed through the meter and the meter reader, assuming that Pine had opened the meter-valve, charged this gas to Pine and it was so charged in the office of plaintiff company. On the following day the meter reader was informed that the Gilmore Producing Company would pay for the gas taken from that meter from that day on, and upon the report of the meter reader the daily charts were charged to the Gilmore Producing Company.

At this point it may be said that there is but little dispute that during the months of November and December, 1928, and January, 1929, 61,452,000 cubic feet of gas passed through the Pine meter and went into the Pine fuel lines and was used in the operation of the wells located on the lease; that 25 cents per thousand cubic feet was the price paid for gas prior to November 1st. The amount of gas used computed at said rate constitutes the amount of the recovery. It is urged by defendant Pine that, assuming that said gas was delivered into his lines and that he received the full benefit thereof, the recovery against him is not justified on that ground; that there was no contract in existence for the purchase of the gas by him from plaintiff company; that as a matter of law a person is permitted to select and determine with whom he will contract; that he cannot be compelled to contract against his will or to have another thrust upon him without

his consent. Plaintiff contends that if the express contract between plaintiff and defendant Pine was terminated on November 1, 1928, the evidence shows that Pine knowingly received the gas after November 1, 1928, and until January 22, 1929, and would therefore be liable under an implied contract.

"An implied contract is one the existence and terms of which are manifested by conduct." Section 9452, O. S. 1931.

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known, to the person accepting." Section 9434, O. S. 1931.

The last cited statute was construed in the case of Stewart v. Ludlow, 127 Okla. 144, 259 P. 335.

In the instant case the jury was instructed as follows:

"You are instructed that a contract of sale may be implied from the facts and circumstances of the case, creating an obligation on the part of the buyer to pay for any personal property received from another, and ordinarily when one person knowingly receives any personal property from another and uses the same, the law implies an agreement on his part to pay therefor. One cannot ordinarily accept any personal property from another and refuse to pay for the same on the ground that there was no contract of purchase."

"In this connection you are instructed that if you find from the evidence in this case that either of the defendants knowingly accepted and used the gas belonging to plaintiff, and if there had been no previous contract for the sale or purchase of it, the acceptance and use of it by such defendant would be sufficient to entitle the plaintiff to recover from such defendant the fair market value of so much of such gas so used by such defendant."

Under this instruction, in order to justify its verdict against the defendant Pine, the jury was required to find that he knowingly accepted and received the full benefit of plaintiff's gas. Said defendant argues that even though he was charged with knowledge that more than 60 million cubic feet of gas went through his fuel lines and was used in the operation of his wells, he was justified in the belief that the gas came from the Forrest Gilmore Company and did not come from the line of plaintiff. We may safely assume that such contention was presented to the jury, and under the court's instructions the jury found that said defendant was charged with knowledge that said gas came from the lines of plaintiff.

The record discloses that sometime during the month of December, 1928, defendant Pine received a bill from the plaintiff company for gas furnished for the month of October in the sum of $6,108.50, and for the month of November in the sum of $3,101.25; that immediately thereafter he addressed to plaintiff the following letter:

"We are enclosing herewith our check in settlement of your October bill for gas used on our Hayecha lease in the sum of $6,108.50 and we are returning herewith your November invoice for gas charged to the same lease in the sum of $3,101.25, which charge is a mistake, as the writer personally advised your field men and the foreman of our lease on the first of November that we were breaking our connections to your meter No. 16962 and did not want the connection reinstalled under any circumstances, as we, from then on, would look to the Forrest E. Gilmore Company for sufficient gas to operate this lease, and we were advised by our men that the Gilmore Company made a connection to this meter through which they took gas into their residue line which did not only supply our lease, but was connected to a number of other leases in the vicinity. Your charge is, therefore, probably against the Forrest E. Gilmore Company.

"Trusting you will cancel this charge and adjust it with whoever was connected with your meter.

"Yours very truly,
"W. B. Pine."

It therefore appears that, during the month of December, defendant Pine was notified that plaintiff was claiming to have delivered through his meter 12,405,000 cubic feet of gas during the month of November; that defendant Pine refused to recognize the claim for the reason that he was "looking to the Forrest E. Gilmore Company for sufficient gas to operate this lease." No effort was made to determine whether or not said company was in fact furnishing sufficient gas to operate the lease. An examination of the entire record together with the conclusions reasonably deducible from all the evidence impels the conclusion that the Forrest E. Gilmore Company at no time during the three months involved herein furnished to defendant Pine sufficient gas to operate the lease. The jury, in effect, concluded that said defendant was not justified in the belief that the gas which

was used to operate his wells was furnished by the Forrest E. Gilmore Company, but was chargeable with the knowledge that said gas came through his meter 'and into his line from the lines of plaintiff company. Such conclusion is sustained by every inference reasonably deducible from the evidence presented.

Various other contentions have been made by the parties hereto. These have been examined and are without substantial merit.

Finding no reversible error in the record, the judgment is affirmed.

BAYLESS, V. C. J., and DAVISON, J., concur. RILEY and CORN, JJ., concur specially. WELCH, PHELPS, and GIBSON, JJ., dissent. HURST, J., disqualified and not participating.

RILEY, J. (concurring specially). I concur specially, finding no fault with the rules of law stated in the present majority opinion, but it is my view th'at this court lost jurisdiction in this cause when a mandate issued regularly herein in November, 1935.

CORN, J., concurs in the view of RILEY, J.

WELCH, J. (dissenting). I cannot concur in the conclusion reached by the majority opinion. It seems to me that the plaintiff is precluded from any recovery against defendant Pine from and after November 3, 1928. On that date the plaintiff was advised that Pine would purchase no more gas through the meter, and that thereafter the Gilmore Company would take and pay for gas through that meter. The plaintiff accepted this situation or arrangement and each day thereafter to January 22, 1929, checked the flow of gas through the meter and each day charged the same to its new customer, the Gilmore Company. By Pine's letter in December the plaintiff's attention was again called to the change in arrangements made at the beginning of November. All these facts are shown in the majority opinion, and it does not appear that plaintiff replied to Pine's December letter or in any m'anner objected to the things therein stated, or in any manner criticized Pine's position in the matter as stated in that letter. Nevertheless the majority opinion sustains plaintiff's right to recover from Pine up to January 22, 1929. It seems to me th'at the evidence affirmatively shows plaintiff is without right to collect from Pine after November 3, 1928. I therefore respectfully dissent.