STIERS et al. v. MAYHALL et al.

No. 34380.    Oct. 7, 1952.

*248 P. 2d 1047.*

Ted R. Fisher and Falkenstine & Fisher, Watonga, for plaintiffs in error.

T. C. Knoop, Canton, and E. Blumhagen, Watonga, for defendants in error.

PER CURIAM. This is an action for damages for loss of use of plaintiffs' lands occasioned by the manner of construction of a temporary bridge across the North Canadian river near Canton, Oklahoma.

There was a verdict and judgment for plaintiffs in the trial court, from which judgment defendants appealed.

The parties will be referred to as they appeared in the trial court.

Plaintiffs filed their petition in the district court of Blaine county against defendants, seeking damages for loss of use of their lands for the year 1947, occasioned and proximately caused by defendants' alleged negligence in the manner of their constructing a temporary bridge across the North Canadian river. Plaintiffs alleged the bridge impeded the flow of water in the channel of the river, impounding same behind the bridge and causing the collected and impounded waters to overflow the east bank of the river and flood their lands.

Defendants contend that they constructed the bridge under authority validly conferred by contract with the United States Government and Corps of Army Engineers, under the Flood Control Act of Congress; said bridge was constructed as a necessary incident in the construction of the spillway and completion of embankment of what is known as the Canton Dam on the North Canadian river; that defendants were acting within the scope of their authority as agents of the United States Government; that they did not exceed their authority and are not chargeable with liability to plaintiffs;

that plaintiffs' remedy was against the United States Government through the Court of Claims. Defendants further denied (1) negligence in the construction of said bridge; (2) that plaintiffs' lands had been flooded; and (3) that plaintiffs had suffered any damage. They further alleged that if plaintiffs' lands had been flooded, such was the result of the "ordinary flood waters" over which they had no control, overflowing the banks of the river below the bridge; also, that "said overflowing of and flooding by said river waters onto plaintiffs' land and leasehold from said points below the construction complained of occurred and reoccurred at frequent intervals from October, 1946, to and including July 31, 1947."

Defendants in their appeal assign twenty-eight errors, but present same to this court under three propositions. Before discussing these propositions, we will briefly summarize the pertinent facts upon which the record discloses some evidence, as follows:

During the months of May and June, 1947, flood waters were upon plaintiffs' fee-owned and leased lands, which prevented and deprived them of planting crops on 130 acres thereof during the planting season. The water was "belly deep to a horse" on some parts of their lands. The flood waters were what was called "backed-up" or "impounded" waters from the North Canadian river, collected behind a temporary bridge across the North Canadian river, which escaped and overflowed the east bank of the river. The bridge obstructed the flow of the ordinary flood waters and had the bridge not been there, said waters would have flowed in the channel of the river. There was evidence showing the rental value of the flooded lands, ranging from $30 to $35 and $40 to $50 per acre.

Defendants were under contract with the United States Government to construct the spillway and complete the embankments of the Canton dam on the river, located about two miles north of Canton, Oklahoma. One of the specifications in the contract for this project was that:

"The contractor, at his own expense, shall also provide and maintain a construction bridge across the river of such design and construction as to afford adequate and dependable means for the transportation of materials between the opposite banks of the river. The location of the bridge and approaches shall be subject to the approval of the contracting officer."

During the month of March, 1946, defendants constructed a dirt or earth-filled bridge across the river, located about 300 feet below or south of the axis of the dam. The bridge contained adequate and sufficient openings or outlets for the normal flow of water in the channel of the river but inadequate and insufficient for the flow of ordinary flood and high waters therein. The ordinary flood and high waters would collect and be impounded above or behind the bridge and at times such impounded waters would be two to four feet higher than the water below the bridge. The bridge washed out in places during the months of June, October and November, 1946, also in January, March, April, May and June, 1947, and was repaired after each washout. During the October, 1946, also the May and June, 1947, wash-outs, waters overflowed the east bank of the river. The location of the bridge was changed one or more times, moving the east end thereof back north and closer to the dam.

One of the defendants, Mr. George M. Stiers, a graduate engineer, who had been engaged in heavy construction work since 1928, was asked why this particular type of bridge was constructed, and answered:

"Well, we were required to furnish a crossing, and we made a study of bridges the previous contractor had in there, and made a study of the bridges he had had in, and washed out, and also a study of the bridge in that vicinity that the county had had in there and had been unable to maintain about a

mile and a half upstream from the dam site, and we knew that the State had had several bridges upstream, that they had been unable to hold; and we also took into consideration that a high-level bridge of that nature would cost—a bridge that wouldn't wash out, I mean, would cost in the neighborhood of $200,000 or $300,000, and would take possibly a year to build. Well, we didn't have that kind of time; so we settled on this type of haul road, knowing that the previous contractor could not maintain a trestle bridge."

The defendants' contract with the Government involved contained the further provision:

"The contractor acknowledges that he has satisfied himself as to the nature and location of the work, the general and local conditions, particularly those bearing upon transportation, disposal, handling and storage of materials, availability of labor, water, electric power, roads, and uncertainties of weather, river stages, tides, or similar physical conditions at the site, the conformation and condition of the ground, the character, quality and quantity of surface and subsurface materials to be encountered, the character of equipment and facilities needed preliminary to and during the prosecution of the work and all other matters which can in any way affect the work or the cost thereof under this contract. * * *"

There was a sharp conflict between the evidence on behalf of plaintiffs and defendants as to (1) defendant's negligence, (2) proximate cause of the flooding of plaintiffs' lands, (3) whether the flood waters came out of the river above, at, or below the bridge, (4) whether said flood waters overflowing the banks of the river above and at the bridge reached and flooded plaintiff's lands, and (5) the amount of damages suffered by plaintiffs. The jury's verdict being for the plaintiffs necessarily and obviously found thereby that the defendants negligently constructed the bridge in such way and manner as to impound the waters of the river and cause said impounded waters to be diverted onto and upon plaintiffs' lands, and that such diversion of

flood waters was proximately caused by defendants' negligence in their failure to provide adequate and sufficient outlets to carry off such waters, and fixed plaintiffs' damages at $1,300.

For reversal of the trial court's judgment, defendants urge first:

"The defendants, as government contractors, acting under authority validly conferred upon them, by their contract with the Corps of Engineers, United States Army, under the Flood Control Act of Congress, for the construction of the spillway and completion of embankment of the Canton Dam, North Canadian River, Oklahoma, cannot be held liable for damage to the plaintiffs' property, unless they exceeded their authority, or if such authority was invalidly conferred upon them; the remedy of plaintiffs in such case being by suit against the Government in the Court of Claims."

(1) Defendants' contract involved herein gave them full and unrestricted supervision and control of the work; however, the United States Engineers retained the right to inspect the material used and workmanship employed by defendants and to determine whether same complied with the specifications and plans. The contract gave to the defendants the status of an independent contractor. We, therefore, conclude that defendants are independent contractors. Bokoshe Smokeless Coal Co. v. Morehead, 34 Okla. 424, 126 P. 1033; City of Gary, Ind. v. Bontrager Const. Co., 113 Ind. App. 151, 47 N. E. 2d 182, 185; Butler v. Civic Gas Co., 199 Okla. 597, 188 P. 2d 843; Cities Service Oil Co. v. Kindt, 200 Okla. 64, 190 P. 2d 1007; Swain v. Nease, 186 Okla. 195, 97 P. 2d 27.

(2) In support of defendants' proposition No. 1, under discussion, they cite the cases of Garrett v. Jones, 200 Okla. 696, 200 P. 2d 402, and Yearsley v. W. A. Ross Construction Co., 309 U. S. 18-23, 84 L. Ed. 554, 60 S. Ct. 413, which we consider inapplicable to the facts in this case for the reason negligence was not an issue therein.

Further, both cases involved the issue as to whether there had been a "taking" of the plaintiffs' lands for public improvements without compensation and in violation of the Fifth Amendment of the Federal Constitution.

Plaintiffs cite and rely upon Converse v. Portsmouth Cotton Oil Refining Corporation (C.C.A.4) 281 Fed. 981, 260 U. S. 724, 67 L. Ed. 482, 43 S. Ct. Rep. 13, which lays down the following rule in its syllabus No. 1:

"Under a contract with the United States for dredging work in a harbor, which required the contractor to make arrangement for disposing of the dredged material and provided that it should be responsible for any damage which might result from such operations, the fact that the contract was for government work and was performed to the satisfaction of the engineer in charge, *held* not to relieve the contractor from liability for damage caused by filling up a creek with dumped material, where such damage was not necessarily incidental to the work, but other dumping grounds were available, the use of which would have avoided the injury."

While the facts in the case at bar differ in some particulars from those in the Converse et al. v. Portsmouth Cotton Oil Refining Corporation case, supra, nevertheless, we consider the reasoning and ruling therein persuasive and applicable here. See, also, Stanton-White Dredging Co. v. Braden, 137 Ark. 127, 208 S. W. 598.

We, therefore, hold in this case, along with the great weight and trend of modern authorities, that one who contracts with a public body is not entitled to avail himself of the immunity of the latter for liability from injuries resulting from negligence in the performance of public work. 43 Am. Jur. "Public Works and Contracts," §§81, 82 and 83; 27 Am. Jur. "Independent Contractors," p. 532, §53, 38 A.L.R. 442; 69 A.L.R. 492; 104 A.L.R. 956; Taylor v. Westerfield, 233 Ky. 619, 26 S. W. 2d 557. To rule otherwise upon the record in this case would by-pass and be in direct conflict with the fundamental principle of law that neither a governmental body nor individual can confer upon an agent authority to commit a tort so as to excuse the perpetrator. Hopkins v. Clemson Agricultural College of South Carolina, 221 U.S. 637, 55 L. Ed. 890; United States v. Board of Com'rs of Grady County, Oklahoma, 54 Fed. 2d 593; Edward F. Johnson v. J. D. Lankford, 245 U. S. 541, 62 L. Ed. 460. The Federal Tort Claims Act, U.S.C.A. Tit. 28, §2674, would not apply here so as to exempt defendants from liability for their negligence.

(3) Defendants in their proposition No. 2 contend the evidence is not sufficient to support the verdict of the jury and the judgment of the trial court thereon, and cite numerous authorities. It would serve no useful purpose and would be burdensome to here review and set out the testimony on controversial issues.

It is a well established rule of law in this state that in a law action, where the evidence is conflicting, the Supreme Court will not substitute its judgment for that of the jury, and neither will it weigh the evidence in such a case properly submitted to a jury. This court has uniformly held that a judgment will not be reversed in such a jury case if there is any competent evidence, together with reasonable inference drawn therefrom, tending to support the verdict. Seifried v. Bash, 183 Okla. 641, 84 P. 2d 34; Peters Branch of International Shoe Co. v. Blake, 74 Okla. 97, 176 P. 892; Pine v. Independent Natural Gas Co., 181 Okla. 495, 74 P. 2d 935. We find from the record that there is competent evidence, together with reasonable inference to be drawn therefrom reasonably tending to support the verdict and judgment of the trial court herein and that the same should not be disturbed.

The record is silent as to any evidence of there having been an "extraordinary" flood or "unusual" weather conditions in the area involved at the

times the bridge was washed out, including the months of May and June, 1947. There was testimony concerning local rains and defendant, Mr. Stiers, was asked if the local rains had any appreciable influence on the level of the water in the river, and answered, "it would have some."

(4-5) This court has defined an "extraordinary flood" as one of those unexpected visitations whose coming is not foreseen by the natural course of nature, and whose magnitude and destructiveness could not have been anticipated, and prevented upon exercise of ordinary foresight, and an "ordinary flood" as being one, the repetition of which, though at uncertain intervals, might, by the exercise of ordinary diligence in investigating the character and habits of the stream, have been anticipated. Chicago, R. I. & P. Ry. Co. v. McKone, 36 Okla. 41, 127 P. 488, 42 L.R.A. (N.S.) 709.

If the flood waters in evidence in this case may be termed acts of God, there can be no question under this evidence but that the manner of constructing, repairing and maintaining the bridge with insufficient openings for the carrying away of the waters in the channel of the river and causing the water to act as it did during the May and June, 1947, floods, was a contributing proximate cause. One is not liable for damage resulting solely from an act of God; but if his negligence is a present contributing cause, which, commingled with the act of God, produces the injury, then he is liable, notwithstanding the act of God.

Upon the record in this case we hold that the acts of the defendants in the performance of their contract for the construction of the temporary bridge used in connection with the building of the spillway and the embankment of the Canton Dam, having knowledge of the ordinary flood waters occurring at uncertain intervals in the area involved, and failing to construct said temporary bridge in a manner to adequately care for said ordinary flood waters, and such failure having been found by the jury to be the proximate cause of the plaintiffs' lands being flooded, constituted actionable negligence. Chicago, R. I. & P. Ry. Co. v. McKone, supra; Missouri, K. & T. R. Co. v. Johnson, 34 Okla. 582, 126 P. 567.

(6) Defendants, in their proposition No. 3, assert the trial court erred in failing to instruct the jury on the fundamental issues raised by the pleadings and evidence in the instructions submitted, and cite numerous authorities. The defendants objected to the trial court's refusal to give certain instructions they requested and to the giving of certain instructions over their objections. We have carefully considered the instructions requested by the defendants and have viewed them in the light of the issues raised in the trial and in the light of the instructions given by the trial court, and are of the opinion that no error was committed in this respect. Rose v. Oehme, 200 Okla. 207, 192 P. 2d 641; Wilkerson v. Grand River Dam Authority, 195 Okla. 678, 161 P. 2d 745; Key v. British Am. Oil Producing Co., 196 Okla. 663, 167 P. 2d 657. The instructions as a whole fairly and fully presented all the issues and the law of the case to the jury.

The judgment of the trial court is affirmed.

This court acknowledges the services of Attorneys William M. Taylor, T. Austin Gavin, and Charles R. Fellows, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council and appointed by the court.

HALLEY, V.C.J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.