FILED
18-0159
6/12/2020 3:14 PM
tex-43709939
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# IN THE SUPREME COURT OF TEXAS

No. 17-1010

DAWN NETTLES, PETITIONER,

v.

GTECH CORPORATION, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

*~ consolidated with ~*

No. 18-0159

GTECH CORPORATION, PETITIONER,

v.

JAMES STEELE, ET AL., RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

BOYD, J., concurring in part and dissenting in part.

Immunity protects the government. An independent contractor is not the government. Therefore, immunity does not protect an

independent contractor. That simple syllogism seems to me to resolve this case.[1]

This Court recently flirted with the notion that derivative sovereign immunity could protect private companies against suits based on conduct performed pursuant to a contract with the government. *See Brown & Gay*, 461 S.W.3d at 123. The Court declined to decide that issue, however, concluding instead that *even assuming* we recognized such derivative sovereign immunity from suit, it would not have protected the private contractor in that case because the government exercised "no control" over that contractor's work. *Id.* at 126 ("We need not establish today whether some degree of control by the government would extend its immunity protection to a private party; we hold only that no control is determinative.").

Today the Court reaches nearly the same result. As in *Brown & Gay*, the Court concludes that it "need not decide" whether to recognize a "doctrine of derivative sovereign immunity for contractors" or what standard to apply to determine the scope of any such immunity. *Ante* at ___. Yet it explains that, were it to "recognize[] derivative sovereign immunity under the control standard," it would "have to determine" whether the Texas Lottery Commission had "sufficient control" over GTECH to establish derivative immunity under a "control-based standard." *Ante* at ___. Finding insufficient control, the Court concludes that GTECH "is not entitled to derivative immunity" against the plaintiffs' fraud claims, *ante* at ___, but is entitled to immunity from derivative liability on the claims for conspiracy and aiding and abetting, *ante* at ___.

For the sake of other government contractors and those with claims against them—not to mention the trial and appellate courts that must resolve those claims—I would eliminate the

---

[1] *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 129 (Tex. 2015) (HECHT, C.J., concurring).

2

uncertainty and decide the issue the Court has been avoiding. And I would reach the simple, logical conclusion that sovereign immunity only protects the sovereign. Because a contract with the government does not make private entities sovereign or governmental, it should never entitle them to sovereign or governmental immunity from suit.

To be clear, I have no problem with the idea that sovereign immunity from suit protects entities that are *designed and created* with the "nature, purposes, and powers" of an "arm of the State" when they are sued for conduct performed in that capacity. *See, e.g.*, *Harris Cty. Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1101 (Tex. 1940) (holding statutorily created flood-control district was "an arm of the State government,[]that is, a State governmental agency"). For the same reasons that sovereign (or governmental) immunity from suit protects state agencies, counties, cities, and other political subdivisions, it also protects open-enrollment charter schools, *see El Paso Educ. Initiative v. Burnham*, No. 18-1167, 2020 WL 2601641, at *1, — S.W.3d — (Tex. May 22, 2020), but not private universities, *see Univ. of the Incarnate Word v. Redus*, No. 18-0351, 2020 WL 2601602, at *2, — S.W.3d — (Tex. May 22, 2020), or economic-development corporations, *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 749–50 (Tex. 2019). Although state agencies, political subdivisions, and arm-of-the-state entities are not themselves the sovereign State of Texas, they are by nature a branch of the sovereign and thus enjoy a form of derivative sovereign immunity. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 326 (Tex. 2006) (holding statutorily authorized self-insurance fund created by and comprised of political subdivisions possessed, by design, the nature, purposes, and powers of the government and thus could assert governmental immunity).

3

Nor do I have any problem recognizing that a form of "qualified immunity" may protect individuals who act in good faith as agents of the government, even if they are not technically government employees. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 393–94 (2012) (extending "qualified immunity" to individuals who contract to act as government agents just as to those who are government employees); *Incarnate Word*, 2020 WL 260160263, at \*9, — S.W.3d at — (discussing official immunity). And I have no problem recognizing a type of "government-contractor defense" against liability *on the merits*, to protect a private party from liability for non-negligent conduct performed in compliance with a government contract and under the government's direction and control. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 846 (Tex. 2000).[2]

But treating private entities as a sovereign entity simply because they contract with the government is another matter altogether. Private entities that are neither designed nor created by the sovereign to act as or on behalf of the sovereign do not possess the sovereignty that justifies sovereign immunity from suit—even if they are regulated or controlled by the sovereign and are sued for conduct that fulfills a public purpose. *See, e.g.*, *Incarnate Word*, 2020 WL 260160263, at \*10, — S.W.3d at — (holding a private university is not an arm of the state protected by sovereign immunity from suit against claims arising from the conduct of its statutorily authorized police

---

[2] We have acknowledged that the federal common-law government-contractor defense generally protects government contractors *from liability* for defectively designed products when (1) the government provided "reasonably precise specifications" for the contractor's product, (2) the contractor's product conformed to those specifications, and (3) the contractor warned the government about any dangers the contractor knew about but the government did not. *See Torrington*, 46 S.W.3d at 846; *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988) (adopting government-contractor defense against "[l]iability for design defects in military equipment"). Courts have recognized a form of government-contractor defense not only against products liability, but also against liability for harm arising from services provided pursuant to a government contract. *See, e.g.*, *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20–21 (1940).

department); *Rosenberg*, 571 S.W.3d at 751 (holding governmental immunity does not protect municipally created economic development corporations because they are not governmental entities "in their own right"). Granting sovereign immunity from suit to a non-sovereign entity distorts the very meaning of sovereign immunity,[3] even if the entity promotes public purposes under a contract with the sovereign. The entity's conduct may promote the sovereign's objectives, but its own nature, purposes, and power as an entity do not thereby become sovereign.

Sovereign immunity (or governmental immunity, when referring to political subdivisions) protects sovereign entities against both lawsuits and legal liabilities. *Hillman v. Nueces County*, 579 S.W.3d 354, 357 (Tex. 2019). We first recognized sovereign immunity as a principle of Texas common law over 170 years ago, but it has existed for more than 600 years and is now a well-established doctrine across the globe. *Id.* at 361.[4] Sovereign immunity includes both immunity from liability—which protects governmental entities from liability on judgments against them—and immunity from suit, which protects them from "the burdens of litigation altogether." *Tarrant County. v. Bonner*, 574 S.W.3d 893, 900 (Tex. 2019). Sovereign immunity is a common-law doctrine; only this Court can declare its existence and scope. But we defer to the legislature, as the policy-making branch of government, to decide whether and when to waive it. *Hillman*, 579 S.W.3d at 361.

Two fundamental characteristics of sovereign immunity simply preclude its application to non-sovereign entities. First, just as its name indicates, sovereign immunity exists because it is

---

[3] *See* Katherine Florey, *Sovereign Immunity's Penumbras: Common Law, "Accident," and Policy in the Development of Sovereign Immunity Doctrine*, 43 WAKE FOREST L. REV. 765, 768 (2008) ("[S]overeign immunity doctrine as a whole has proven susceptible to a kind of definition creep.").

[4] *See also Hughes v. Tom Green County*, 573 S.W.3d 212, 218 (Tex. 2019) (summarizing the doctrine's history in British, U.S., and Texas law).

"inherent in the state's sovereignty." *Dall./Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 366 (Tex. 2019); *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018). As Alexander Hamilton explained long ago, "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual WITHOUT ITS CONSENT." THE FEDERALIST No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed., 1961). The State of Texas is "inviolably sovereign" because "sovereignty is inherent in its statehood," *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429 (Tex. 2016), and sovereign immunity from suit is one of the "attributes" of its sovereignty, *Rosenberg*, 571 S.W.3d at 746. Because "sovereignty itself remains an important justification for sovereign immunity," *Nazari v. State*, 561 S.W.3d 495, 508 (Tex. 2018), extending sovereign immunity to a non-sovereign entity contradicts and distorts the very nature of sovereign immunity.

Second, sovereign immunity from suit implicates the courts' subject-matter jurisdiction over suits against the sovereign, *see Vizant Techs.*, 576 S.W.3d at 367, and thus "bars suit against the entity altogether," *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). This means the courts have no power over claims against the entity, "without regard to whether the claims asserted have merit," *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000), "even if the State acknowledges liability on a claim," *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003), and when "the sovereign's liability is not disputed," *Rosenberg*, 571 S.W.3d at 746.

As a result, "just as immunity is inherent to sovereignty, unfairness is inherent to immunity," *City of Galveston v. State*, 217 S.W.3d 466, 480 n.38 (Tex. 2007) (Willett, J., dissenting). Sovereign immunity from suit "allows the 'improvident actions' of the government to go unredressed," *Hall v. McRaven*, 508 S.W.3d 232, 243 (Tex. 2017), and thus "places the burden

6

of shouldering" the "costs and consequences" of those actions "on injured individuals," rather than on the entity that caused those consequences, *Brown & Gay*, 461 S.W.3d at 121. Even though the sovereign acted negligently, violated a legal standard, or otherwise breached a duty, sovereign immunity prevents the courts from providing "accountability under the law for the government's breaches." *Rosenberg*, 571 S.W.3d at 741.

Recognizing that sovereign immunity derives solely from sovereignty, divests courts of their constitutional powers, and defends the sovereign even when it wrongfully harms one of the sovereign's citizens, I see no reason why sovereign immunity from suit should ever apply to protect a non-sovereign entity—even those that contractually agree to allow the sovereign to control their actions.

Extending sovereign immunity to such entities is not only inconsistent with the very nature of sovereign immunity, it does nothing to support the purposes for which we have continued to recognize sovereign immunity. Initially, courts recognized sovereign immunity under the theory that "the king can do no wrong," *Tooke*, 197 S.W.3d at 331, but we have rejected that "feudal fiction" under our democratic form of government, *Rosenberg*, 571 S.W.3d at 740–41. Nevertheless, we continue to recognize sovereign immunity because of its "political, pecuniary, and pragmatic" purposes. *Id.* at 740.

Politically*,* we continue to recognize sovereign immunity because it "preserves separation-of-powers principles by preventing the judiciary from interfering with the Legislature's prerogative to allocate tax dollars." *Brown & Gay*, 461 S.W.3d at 121. By preserving the common-law doctrine of sovereign immunity, the courts maintain an "equilibrium among the branches of government" by allowing the legislature to decide, as a policy matter, when to "allow tax resources

to be shifted 'away from their intended purposes toward defending lawsuits and paying judgments.'" *Rosenberg*, 571 S.W.3d at 740–41 (quoting *Brown & Gay*, 461 S.W.3d at 121). In short, sovereign immunity prevents the courts from "intruding into" the policy-making branch's role of managing and appropriating the public's funds. *Hughes*, 573 S.W.3d at 218.

By requiring a legislative decision to make tax dollars available to pay the costs of litigation and judgments, *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 347 (Tex. 2019), sovereign immunity serves the pecuniary purpose of ensuring "that the taxes the public pays are used 'for their intended purposes.'" *Hillman*, 579 S.W.3d at 361 (quoting *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006)). It "protect[s] the public treasury," *Wichita Falls State Hosp.*, 106 S.W.3d at 695, by "shield[ing] the public from the costs and consequences of improvident actions of their governments," *Tooke*, 197 S.W.3d at 332.

And pragmatically, sovereign immunity "serves to prevent governmental paralysis" by protecting "the State and its political subdivisions from endless litigation," *Hughes*, 573 S.W.3d at 218, which "hamper[s] government functions." *Ben Bolt*, 212 S.W.3d at 326. It safeguards "the public as a whole" by protecting its governmental agencies from both the "distraction" of lawsuits and the risks that litigants could control government action through the courts instead of through the political process. *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 703–04 (Tex. 2019) (quotation and citation omitted).

Extending sovereign immunity from suit to non-sovereign entities merely because they contract with the sovereign does nothing to promote these purposes. Requiring private entities to defend suits alleging they engaged in harmful conduct poses no threat to the separation of powers because the legislature does not fund private entities through tax appropriations or "allocate tax

8

dollars" to pay for judgments against them. *Brown & Gay*, 461 S.W.3d at 121. When the government contracts to obtain services or products from a private entity, the government pays only the amount it chooses to pay through the contracting process. If the private contractor must defend against or pay a judgment based on its own harmful conduct, its payment of those costs (whether from its own funds or using insurance benefits, *see id.* at 123) comes from private coffers, not from public funds. And even if the risk of litigation or liability increases the government's costs to obtain the services or products, it still remains the government's political choice to use tax dollars to pay that cost for its "intended purposes." *Id.* at 121, 123 (noting that sovereign immunity is not "strictly a cost-saving measure"). Because sovereign immunity protects the sovereign entity even if its private contractor is sued or found liable, the litigation will not interfere with the government's business or control the government's actions. In short, as we said in *Brown & Gay*, extending sovereign immunity from suit to non-sovereign government contractors simply does not serve these purposes. *Id.* at 119.[5]

Nor do these purposes justify the Court's decision today to extend sovereign immunity from suit to private entities that are sued on derivative claims like conspiracy and aiding and abetting. *See ante* at ___. The Court suggests that imposing "derivative liability" on GTECH based on the Commission's decisions and actions "implicate[s]" sovereign immunity's purposes by

---

[5] Without citing authorities and with little discussion, we extended a form of a "sovereign immunity" to a government contractor in *K.D.F. v. Rex*, 878 S.W.2d 589 (Tex. 1994). That decision, however, sought to promote a unique purpose by extending a comity-based refusal to exercise jurisdiction in light of the sovereign immunity of the State of Kansas, based on a Kansas statute that waived immunity but required suits complaining of "acts of the [state's retirement] system" to be brought in a specific Kansas county. *Id.* at 596. In light of that statute, we held that the contractor could benefit "indirectly" from the system's sovereign immunity because it was effectively the system's "agent." *Id.* Regardless of whether that holding was correct as a general principle, *K.D.F.* is not controlling on the present issue because it "required us to interpret statutory language that is not at issue here." *Brown & Gay*, 461 S.W.3d at 124.

9

requiring courts to interfere with the Commission's "policymaking responsibilities" and controlling its "choices regarding the use of public funds." *Ante* at ___. But it does no such thing. Courts can easily resolve such claims against private entities without having to exercise any control over the governmental entity, its policy choices, or its use of tax dollars. And if, as the Court suggests, a private entity cannot be "derivatively liable" for conspiring with or abetting a governmental entity, courts can simply dispose of such derivative claims on summary judgment, or even on the pleadings under Rule 91a. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 154 (Tex. 2004) (holding law firm was entitled to summary judgment on derivative claims based on attorney's actions when attorney was protected by legislative immunity). Requiring private entities to assert and establish a merits defense in no way undermines the purposes of sovereign immunity, and depriving courts of the power to adjudicate that defense does nothing to promote those purposes.

Finally, extending sovereign immunity from suit to non-sovereign government contractors would make Texas an outlier among other U.S. jurisdictions. Although other jurisdictions have recognized liability defenses for government contractors, and even referred to such defenses as a form of derivative or acquired immunity, they have not extended true sovereign immunity from suit to non-sovereign entities.

The United States Supreme Court first recognized derivative protection for government contractors in *Yearsley* but acknowledged only a protection against "liability"—not "immunity" and not against "suit"—and even then only if the contractor acted under and within a validly conferred authority. 390 U.S. at 20–21. More recently, the Court explained that this protection does not offer contractors an "unqualified immunity," even "from liability," and the contractor's

10

protection, "*unlike the sovereign's*, is not absolute." *Campbell-Ewald Co. v. Gomez*, — U.S. —, 136 S. Ct. 663, 672 (2016) (emphasis added). Instead of "acquir[ing] the Government's embracive immunity," the contractor enjoys no protection when it "violates both federal law and the Government's explicit instructions." *Id.* As one commentator has observed, the protection the Supreme Court has extended to government contractors might qualify as a form of "derivative immunity," but it is not "derivative *sovereign* immunity," and certainly not derivative sovereign immunity from suit. Jason Malone, *Derivative Immunity: The Impact of Campbell-Ewald Co. v. Gomez*, 50 CREIGHTON L. REV. 87, 88 n.6, 124 (2016).

Similarly, the federal circuits have generally refused to recognize a derivative sovereign immunity from suit that both deprives the courts of jurisdiction and protects private government contractors even against their own wrongful conduct. Some circuits have expressly rejected a derivative immunity that deprives the courts of jurisdiction, holding instead that the protection for government contractors merely provides a form of "qualified immunity" that must "be reviewed on the merits rather than for jurisdiction." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015); *see also Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207–08 (5th Cir. 2009) (holding that protection for contractors under *Yearsley* is not "shared" sovereign immunity and "does not deny the court of subject-matter jurisdiction"); *U.S. ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1146–47 (9th Cir. 2004) (holding that the government contractor defense does not confer sovereign immunity on contractors).

While other federal circuits have extended *Yearsley* to provide what they called "jurisdictional" protection, they too acknowledged that it is not true "sovereign immunity" because it applies only if the contractor "adhered to the terms of its contract with the government" and

11

engaged in no negligence or other misconduct. *See McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1345 (11th Cir. 2007) ("[J]ust as in the area of official immunity, the immunity of a common law agent must be affirmatively justified."); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963) (recognizing protection against "liability" for contractors, but only to the extent they performed their work "in conformity with the terms of said contract").[6]

In the same way, none of the states have extended true sovereign immunity from suit to private government contractors. Some states have expressly rejected any form of derivative sovereign immunity from suit for government contractors.[7] Others have recognized something akin to the government-contractor defense on the merits, or perhaps a limited "immunity from liability," by granting protection against "liability" so long as the contractor complies with the contract and does not engage in negligence or other wrongful conduct.[8] Still others have referred

---

[6] *See also In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014) (holding contractor was entitled to derivative sovereign immunity if it adhered to the terms of its contract with the government); *but see Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (extending broad sovereign immunity to foreign government's contractor/agent under the federal Foreign Sovereign Immunities Act, so long as contractor was "following Saudi Arabia's orders not to promote" a female employee).

[7] *See* COLO. REV. STAT. § 24-50-505 (2019) ("The sovereign immunity and governmental immunity of the contracting agency shall not extend to the contractor, except as otherwise provided by law. Neither the contractor nor the insurer of the contractor may plead the defense of sovereign immunity or governmental immunity in any action arising out of the performance of the contract."); *Atkinson v. Sachno*, 541 S.E.2d 902, 905 (Va. 2001) ("[W]hile some employees or agents of the Commonwealth *may* be entitled to the protection of sovereign immunity, all independent contractors are excluded from that protection."); *Evans v. Patterson*, 112 So. 2d 194, 198 (Ala. 1959) ("[A] highway contractor in building a road under a contract with the state does not enjoy the same privilege as the state does of *immunity from suits* for personal injuries sustained by travellers on the highway undergoing construction, maintenance or repairs.") (emphasis added); *Ference v. Booth & Flinn Co.*, 88 A.2d 413, 414 (Pa. 1952) ("It is hornbook law that the immunity from suit of the sovereign state does not extend to independent contractors doing work for the state.").

[8] *See, e.g.*, *Black v. Peter Kiewit Sons' Co.*, 497 P.2d 1056, 1058 (Idaho 1972) ("[I]f a contractor performs his work according to plans and specifications, *no liability* may be imposed upon him for any damage resulting from such construction.") (emphasis added); *City of Louisville v. Padgett*, 457 S.W.2d 485, 488 (Ky. 1970) (holding state contractor who "performs his contract in conformity with the plans and specifications of the contract will not be held liable for injury to the public in the absence of a negligent . . . or a willful tortious act"); *Ference*, 88 A.2d at 414 (holding contractor "is not liable" if he "performs his work in accordance with the plans and specifications and is guilty of neither a negligent nor a willful tort"); *Wood v. Foster & Creighton Co.*, 235 S.W.2d 1, 3–4 (Tenn. 1950) ("The contractor thus *not being guilty of negligence* and having merely followed the directions of its superior, the

12

to the protection as a form of "immunity," but their analyses and holdings make clear that it is not sovereign immunity from suit because it applies only if the contractor was not negligent and did not otherwise engage in wrongful conduct.[9]

Consistent with the great weight of our national jurisprudence, the very nature of sovereign immunity, and the purposes for which we continue to uphold the doctrine, I would not extend sovereign immunity from suit to non-sovereign government contractors. While I would support the Court's recognition of an affirmative defense to liability on the merits against any such claims, these cases come before us today as appeals from the trial courts' rulings on GTECH's jurisdictional pleas. In the absence of sovereign immunity from suit, the trial courts had jurisdiction

---

State, in doing this work is clearly *not liable* herein.") (emphases added); *Tillotson v. Fair*, 159 P.2d 471, 476 (Kan. 1945) ("[A]n independent contractor who is awarded a contract by the State Highway Commission for the construction of a highway improvement authorized by statute, and who performs that contract according to plans and specifications *with proper care and skill, is not liable* in damages for incidental injuries involved in the performance of such contract after the work required by its terms has been completed and the improvement turned over to and accepted by the Commission.") (emphasis added); *Broadhurst v. Blythe Bros. Co.*, 17 S.E.2d 646, 649–50 (N.C. 1941) ("[N]or is a contractor, though working under contract with the Highway Commission, relieved of liability for injuries proximately caused by its negligence.").

[9] *See, e.g.*, *Smith v. Rogers Grp., Inc.*, 72 S.W.3d 450, 456, 460 (Ark. 2002) (recognizing that "acquired immunity" protects a contractor "who performs in accordance with the terms of its contract with a governmental agency and under the direct supervision of the governmental agency," unless "the contractor is negligent in the performance of the contract" but such acquired immunity "is not immunity from suit; rather, it is immunity from liability"); *McLain v. State*, 563 N.W.2d 600, 605 (Iowa 1997) ("The rule is well established that a contractor for the State is not liable to a third party for damages if the contractor complies with the State's plans and specifications and is not negligent in performing its work. In other words, in those situations the contractor shares the same immunity as the State. . . . However, if a contractor acts negligently, it cannot enjoy any immunity."); *W. Contracting Corp. v. Titter*, 258 A.2d 600, 605 (Md. 1969) ("[T]his immunity of the contractor doing work for the government in navigable waters does not protect the contractor from liability for his own negligence."); *Abercrombie v. Ledbetter-Johnson Co.*, 157 S.E.2d 493, 494 (Ga. 1967) ("It is the settled law of this State that a contractor engaged in public work under contract with the State or one of its political subdivisions is not *immune to liability* for injuries *caused by its negligence* while performing the contract.") (emphases added); *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, 123 A.2d 888, 890 (Pa. 1956) ("[I]t has been uniformly held that in the absence of negligence or wilfully tortious conduct on the part of an independent contractor, he is not liable for injury to another's property which is caused by the performance of his contract with a governmental instrumentality in accordance with its plans and specifications."); *Stiers v. Mayhall*, 248 P.2d 1047, 1052 (Okla. 1952) ("We, therefore, hold in this case, along with the great weight and trend of modern authorities that, one who contracts with a public body is not entitled to avail himself of the immunity of the latter for liability from injuries resulting from negligence in the performance of public work.").

over the claims, so I would reverse both appellate court judgments and remand the cases to the trial courts for consideration of GTECH's merits-based defenses.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 12, 2020

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Envelope ID: 43709939
Status as of 06/12/2020 15:17:51 PM -05:00

Associated Case Party: GTECH Corporation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael Bernick | 24078227 | mbernick@reedsmith.com | 6/12/2020 3:14:42 PM | SENT |
| Arturo Munoz | | amunoz@reedsmith.com | 6/12/2020 3:14:42 PM | SENT |

Case Contacts

| Name |
|---|
| Nina Cortell |
| Denise Stilz |
| Michelle Meuhlen |
| Kent Rutter |
| Jason NealJordan |
| Janet Neal |
| Richard LaGarde |
| Kenneth E. Broughton |
| William Webb |
| Daniel H. Byrne |
| Manfred Sternberg |
| Andrew George Khoury |
| Leonard Cox |
| Blake Charles Erskine |
| Paul Morin |
| Christopher Scott Hamilton |
| John Read |
| Leroy Scott |
| Olegario Garcia |
| Henderson L. Buford |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below:

Envelope ID: 43709939
Status as of 06/12/2020 15:17:51 PM -05:00

Case Contacts

| William Martin Pratt | 24005118 | lawofficeoffice@yahoo.com | 6/12/2020 3:14:42 PM | SENT |
|---|---|---|---|---|
| Richard W. Mithoff | 14228500 | rmithoff@mithofflaw.com | 6/12/2020 3:14:42 PM | SENT |
| Joseph Wesley Dauphinot | 793584 | wes@dauphinotlawfirm.com | 6/12/2020 3:14:42 PM | SENT |
| Kevin Philip Parker | 15494020 | kpp@lanierlawfirm.com | 6/12/2020 3:14:42 PM | SENT |
| Christopher Lee Gadoury | 24034448 | chris.gadoury@lanierlawfirm.com | 6/12/2020 3:14:42 PM | SENT |
| Eugene W. Brees | 2947500 | cbrees@nationaltriallaw.com | 6/12/2020 3:14:42 PM | SENT |
| James Dean Hurst | 10315250 | jdhurst@sbcglobal.net | 6/12/2020 3:14:42 PM | SENT |
| W. Mark Lanier | 11934600 | jrm@lanierlawfirm.com | 6/12/2020 3:14:42 PM | SENT |
| Jason LaFond | | jason.lafond@oag.texas.gov | 6/12/2020 3:14:42 PM | SENT |
| clerk clerk | | clerk@hamiltonwingo.com | 6/12/2020 3:14:42 PM | SENT |
| Mike Hatchell | | mike.hatchell@haynesboone.com | 6/12/2020 3:14:42 PM | SENT |
| Chris Knight | | chris.knight@haynesboone.com | 6/12/2020 3:14:42 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 6/12/2020 3:14:42 PM | SENT |
| John T.McDowell | | jtm@houstontrialattorneys.com | 6/12/2020 3:14:42 PM | SENT |
| Jerry B.Register | | registerjb@outlook.com | 6/12/2020 3:14:42 PM | SENT |
| Andrea L.Fitzgerald | | afitzgerald@hamiltonwingo.com | 6/12/2020 3:14:42 PM | SENT |
| Kacy JoyShindler | | ks@houstontrialattorneys.com | 6/12/2020 3:14:42 PM | SENT |
| Arturo Munoz Holguin | | amunoz@reedsmith.com | 6/12/2020 3:14:42 PM | SENT |